SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
Dorothy M. Weber
Judith A. Meyers
494 Eighth Avenue, Suite 600
New York, NY  10001
(212) 245-4580
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company, | Case No.: 1:17-cv-1927 |

**JURY TRIAL DEMANDED COMPLAINT**

Plaintiffs,

-against-

ANDREW PITSICALIS, an individual; LEON
HENDRIX, an individual; PURPLE HAZE
PROPERTIES, LLC, a Nevada Limited
Liability Company; ROCKIN ARTWORK,
LLC, a Nevada Limited Liability Company;
CARMEN COTTONE a/k/a CARMEN THOMAS
ANDOLINA a/k/a CARM COTTONE, an individual
d/b/a PARTNERS AND PLAYERS,  a New York
Company and d/b/a DYNASTY GOURMET
FOODS, a New York Company; and C-LIFE
GROUP, LTD., a New York Corporation,

Defendants.
------------------------------------------------------------------x

Plaintiffs  Experience  Hendrix  L.L.C.  and  Authentic  Hendrix,  LLC

(collectively,  "Plaintiffs"),  by  their  attorneys,  Shukat  Arrow  Hafer  Weber  &

Herbsman,  LLP,  for  their  Complaint  herein  against  Andrew  Pitsicalis,  Leon

Hendrix,  Purple  Haze  Properties,  LLC,  and  Rockin  Artwork,  LLC  ("the Pitsicalis

Defendants"), Carmen Cottone a/k/a Carmen Thomas Andolina a/k/a Carm Cottone d/b/a Partners and Players and d/b/a Dynasty Gourmet Foods, and C-Life Group, Ltd., (collectively, "Defendants"), allege as follows:

## SUMMARY OF CLAIMS

This action arises from Defendants' attempts to improperly exploit the intellectual property rights of one of the greatest artists in the history of Rock and Roll music, Jimi Hendrix. Plaintiffs, Experience Hendrix, L.L.C. and Authentic Hendrix, LLC, the successors-in-interest to the Hendrix Estate, bring this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the United States Copyright Act, 17 U.S.C. §§ 106, 201, 501 and 504, trademark infringement, deceptive acts and practices under New York Law, and various other state and federal claims, seeking equitable relief and damages based on Defendants' unauthorized use and exploitation of intellectual property rights owned exclusively by the Plaintiffs.

## PLAINTIFFS' COMMITMENT TO PRESERVING JIMI HENDRIX'S MUSICAL AND CULTURAL LEGACY

### A.   BACKGROUND OF PLAINTIFFS AND THEIR RIGHTS

1.     Jimi Hendrix was a famous musician, guitar player, and celebrity. Jimi died in 1970. Al Hendrix was Jimi's father and sole heir. In 1995, Al Hendrix founded Experience Hendrix L.L.C. and Authentic Hendrix, LLC ("Plaintiffs"). Al handpicked Janie Hendrix, Jimi's cousin Bob Hendrix and certain other family members he wanted to manage those companies. Al expressly excluded Leon Hendrix ("Leon") and his family from that management team.

2.      Al Hendrix and then his select family members through the Plaintiffs have been singularly committed to preserving Jimi Hendrix's musical, cultural and artistic legacy.    The Plaintiffs have owned, managed, licensed and tastefully marketed Jimi's music, recordings, artistic properties and related merchandise throughout the world.    As a result of Jimi's unique talents, and the Plaintiffs' continued stewardship and promotion, Jimi Hendrix and his works, name, and image are famous, and enjoy continuing celebrity status.

3.      Since their inception, Plaintiffs have used federally registered and common law trademarks, service marks, trade names and logos to sell Jimi Hendrix related promotional merchandise and services to the general consuming public through catalog sales and Internet websites, retail stores, and licensee sales.    The types of goods sold under the various marks and under the authority of Experience Hendrix, L.L.C. and Authentic Hendrix, LLC (collectively "the Hendrix Companies") are wide-ranging.    The marks owned and used by the Plaintiffs include "JIMI HENDRIX", "THE JIMI HENDRIX EXPERIENCE", "HENDRIX", "EXPERIENCE HENDRIX", "AUTHENTIC HENDRIX", the design marks of the signature of Jimi Hendrix, and an image (head or bust) of Jimi Hendrix.    The Plaintiffs have preserved the Jimi Hendrix legacy and have continuously enforced their trademark rights.

3

4.      Al Hendrix died on April 17, 2002.  In his Last Will, Al bequeathed the ownership of the Hendrix Companies to family members other than Leon Hendrix.[1]

**B.      PITSICALIS AND LEON HAVE MISSAPPROPRIATED PLAINTIFFS' TRADE MARKS AND COPYRIGHTS FOR THEIR OWN GAIN**

5.      Over the past 10 years, Defendants Andrew Pitsicalis ("Pitsicalis") and Leon Hendrix, and a variety of individuals and entities with which they have been associated, have attempted to hijack Plaintiffs' trademarks and copyrights for their own personal gain.   Federal courts have repeatedly prohibited those unlawful activities.   Ignoring those prohibitions, Pitsicalis and Leon recently have renewed and expanded their infringments of Plaintiffs' trademarks and copyrights through the creation, development, licensing, manufacturing, promotion, advertsing and sale of Cannabis, edibles, food, wine, alcohol, "medicines," electronic products, and other goods.   In support of that campaign, Pitsicalis has widely claimed that he has secured the intellectual property of the Jimi Hendrix estate for licensed products.   That claim is knowingly false.  Moreover, Pitsicalis' representation that his company, Purple Haze Properties, LLC "… represents the greatest guitarist in Rock 'n' Roll history, 'my man, Jimi Hendrix …" is also knowingly false.   Pitsicalis proudly boasts that his exploitation of that "celebrity" helps his products "stand out" among hundreds of his competitors' products.

---

[1]     Leon Hendrix challenged Al's Last Will in order to share, _inter_ _alia_, in the intellectual property rights relating to Jimi Hendrix.  In 2004, the Court denied that challenge, finding that neither Leon nor his children had any claim to the Jimi Hendrix rights owned by the Jimi Hendrix Estate.  Affirmed _In re Hendrix_ 134 Wn. App. 1007 (2006).

### C.    2008 INJUNCTION AGAINST LEON AND PITSICALIS

6.    In September 2005, Leon Hendrix, Craig Dieffenbach ("Dieffenbach"), and others, including Andrew Pitsicalis, began operating Electric Hendrix, LLC for the primary purpose of marketing vodka and merchandise, and promoting its goods and services using a Jimi Hendrix "signature" mark, and Jimi Hendrix "headshot" mark.



7.    In 2007, Plaintiffs commenced an action against Dieffenbach, Leon, their companies and employees for infringement of their trademarks.[2]  In 2008, the Court concluded that the Electric Hendrix marks infringed on the Plaintiffs' marks:

---

[2] *Experience Hendrix, L.L.C. et al v. Electric Hendrix, LLC*, et al USCD WDWA, Case No. C07-338 TSZ.  Attorney Thomas Osinski represented Dieffenbach in the later stages of the case.

**EXPERIENCE HENDRIX**                **ELECTRIC HENDRIX**

                

The Court prohibited Electric Hendrix and its employees, including Pitsicalis, from using the Plaintiffs' "headshot" logo or any similar mark, brand, or logo, and Jimi Hendrix signature or any similar signature in the sale of alcohol or other goods.

### D.    2015 INJUNCTION AGAINST PITSICALIS

8.    In 2008, Pitsicalis began his own crass, unauthorized exploitation of Jimi Hendrix and Jimi Hendrix related marks. On or about February 25, 2008, Pitsicalis created HendrixLicensing.com, LTD, d/b/a HendrixArtwork.com and began to license and sell Jimi Hendrix merchandise.

9.    On March 5, 2009, the Plaintiffs commenced a suit against Pitsicalis and his various Hendrix-related companies[3]  In that case, the Federal Court found that Pitsicalis, who "was formerly associated with Dieffenbach and Electric Hendrix, LLC," was "undisputedly aware of the prior suit between Experience and Dieffenbach."[4]   On May 8, 2015, that Court issued an amended permanent

---

[3] *Experience Hendrix, et al v. Hendrixlicensing.com, LTD, et al*, Western District of Washington Case No. C-09-0285 TSZ.   Attorney Thomas Osinski represented Pitsicalis and his companies in that, as well as in subsequent litigation.

[4] *Experience Hendrix, L.L.C. v. HendrixLicensing, LTD*, 766 F.Supp.2d 1122, 1128 (W.D. Washington 2011).

injunction against Pitsicalis, prohibiting him from using the following "guitar and headshot" logo or any similar mark, brand, or logo and from using the Jimi Hendrix signature or any similar signature in connection with the advertising and/or sale of posters, artwork, fine art prints, apparel, merchandise, memorabilia, and/or novelty items:

 

### E.   2016 INJUNCTION AGAINST LEON

10.     In 2014, Leon, Pitsicalis and "Rockin' Artwork, LLC" formed a business relationship with Tiger Paw Beverages for the purpose of creating a line of alcoholic beverages using the Hendrix Marks and other copyrights - the same activity the Federal Court had enjoined in 2008.

11.     On January 27, 2017 the United States District Court for the Southern District of Georgia issued a Permanent Injunction prohibiting Tiger Paw Beverages and the other remaining defendants from using any of the Hendrix Marks, copyrights, or name signature or likeness for any trademark or endorsement purposes whatsoever.

12.     On July 21, 2016 same court entered a preliminary injunction whereby the Court enjoined those defendants:

(1)     from using the word "jimi" in the names of their websites, social media profiles, or other online platforms that are used to distribute, sell, or otherwise promote Purple Haze Liqueur;

(2)     from manufacturing, distributing, selling, or promoting any bottle of Purple Haze Liqueur that has the web address www.jimipurplehaze.com printed visibly thereupon; and

(3)     from displaying, on any of their materials, the Jimi Hendrix signature that is found in Exhibit 1 attached to this Order.



## F.     THE PITSICALIS DEFENDANTS' NEW INFRINGING CONDUCT

13.     By falsely suggesting endorsement by Jimi Hendrix, the Jimi Hendrix estate or Plaintiffs, the Pitsicalis Defendants have unlawfully promoted, packaged, marketed, advertised, licensed, and sold their Jimi Hendrix Cannabis, edibles, food, wine, alcohol, "medicines," and electronic products (the "Infringing Products") using Plaintiffs' incontestable trademarks in a similar manner:

Pitsicalis Defendants' Infringing Trademarks[5]



14.    The Pitsicalis Defendants' unlawful actions are intentionally designed to capitalize on the goodwill, recognition and fame associated with the Plaintiffs' Jimi Hendrix marks and rights. "Jimi" and "Hendrix" are integral and dominant parts of Plaintiffs' registered trademarks.   Those acts have tarnished and diluted

---

[5] The guitar featured in a number of these marks is a Fender Stratocaster, which is subject to other intellectual property rights owned by Fender Guitars. Fender has also been an authorized licensee of Plaintiffs.

the value of those marks by falsely associating the Plaintiffs with those Defendants' unauthorized sale of their infringing products.  By this lawsuit, the Plaintiffs seek to permanently stop the Pitsicalis Defendants from infringing and misappropriating Plaintiffs' marks and goodwill, to disgorge all profits they have unlawfully made, and to obtain redress for the damage done to the Plaintiffs and their marks.

## **THE PARTIES**

15.    Plaintiff Experience Hendrix, L.L.C. ("Experience") is a limited liability company established under the laws of the State of Washington.  Plaintiff Experience is the assignee of and sole owner of the copyrights and trademark rights owned by Jimi Hendrix and is the proprietor of the intellectual property rights relating to a vast catalog of musical compositions and sound recordings created by the late Jimi Hendrix. Its exclusive licensing agent is Bravado International Group, located in New York, New York.

16.    Plaintiff Authentic Hendrix, L.L.C. ("Authentic") is a limited liability company established under the laws of the State of Washington.  Plaintiff Authentic is the assignee of and sole owner of the copyrights and trademark rights owned by Jimi Hendrix and is the proprietor of the intellectual property rights relating to a vast catalog of musical compositions and sound recordings created by the late Jimi Hendrix. Its exclusive licensing agent is Bravado International Group, located in New York, New York.

17.    Defendant Andrew Pitsicalis is the President and Founder of Defendant Purple Haze Properties, LLC. Pitsicalis is also the President of

Defendant Rockin Artwork, LLC, another entity involved in the enterprise to infringe the rights of the plaintiffs. On information and belief, Defendant Pitsicalis is a citizen and resident of the State of California.

18.     Defendant Leon Hendrix is the partner of Pitsicalis, founder and an officer of Defendant Purple Haze Properties, LLC.  Leon also is a managing member of Defendant Rockin Artwork, LLC and is a citizen and resident of the State of California.

19.     Defendant Purple Haze Properties, LCC is a Nevada limited liability company with its principal place of business at 8265 Sunset Blvd., Suite 100, West Hollywood, California 90046.

20.     Defendant Rockin Artwork, LLC is a Nevada limited liability company with its principal place of business at 1641 Viewmont Drive, Los Angeles, California 90069.

21.     Defendant Carmen Cottone is an individual a/k/a Carmen Thomas Andolina a/k/a Carm Cottone d/b/a Partners and Players and Dynasty Gourmet Foods, entities doing business in New York, California and Florida with their principal places of business at 138 Shaemus Drive, Rochester, New York 14626 and 144 Fairport Village Landing, Fairport, New York 14450.

22.     Defendant C-Life Group, Ltd. is a New York Corporation with its principal place of business at 1400 Broadway, Suite 700, New York, NY 10018. C-Life Group, Ltd. is a prior licensee of Plaintiff Authentic Hendrix LLC pursuant to a

written agreement. Defendant C-Life is now a "licensee" of the Pitsicalis Defendants.

## JURISDICTION AND VENUE

23.     Plaintiffs bring this suit against all Defendants seeking damages and injunctive relief as a result of trademark infringement under the trademark laws of the United States, namely, Title 15 of the United States Code, 15 U.S.C. §§ 1114 and 1116-1118, inclusive; 15 U.S.C. §§1051 *et seq.* ("Lanham Act"); for copyright infringement under Title 17 of the United States Code, the Copyright Act, 17 U.S.C. §§ 106, 201, 501 and 504; for trademark infringement and deceptive acts and practices under New York Law; and various other state and federal claims.

24.     This Court has subject matter jurisdiction of this action under the provisions of 15 U.S.C. §1121; and 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 1367. This Court also has jurisdiction based upon the diversity of the parties pursuant to 28 U.S.C. §1332, as this is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

25.     This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law. The Court also has subject matter jurisdiction overt those claims pursuant to 28 U.S.C. § 1367, because Plaintiffs' state law claims are interrelated with Plaintiffs' federal claims and arise from a common nucleus of

operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal claims furthers the interest of judicial economy.

26.     This Court has personal jurisdiction over each of the Defendants who, on information and belief, have maintained systemic contact with the State of New York, have transacted business within the State of New York (e.g., advertised, marketed, sold, and/or shipped its products, including, but not limited to, the infringing products discussed below, to New York residents, including, but not limited to, those within the venue of this Court, and/or have travelled in and to the State of New York to commit acts that have caused tortious injury to Plaintiffs in this Judicial District pursuant to New York's long-arm statute, N.Y.C.P.L.R. §§ 301 and 302.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because at least one of the Defendants reside in this district, and because some of Plaintiffs' claims arise in this district, and because some of Defendants' participation in the unlawful acts and events occurred in this district. Plaintiffs transact business in New York City through its agents.

## I.      PLAINTIFFS' FAMOUS, STRONG AND INCONTESTABLE TRADEMARKS AND COPYRIGHTS

### A.      Hendrix Companies' Design Marks and Trademarks

28.     Over the past two decades, the Plaintiffs have carefully developed a licensing program around its Jimi Hendrix-related trademarks and copyrights, in connection with "Jimi" and his legacy, and have endorsed and licensed a range of products, which all must meet the standards of the Hendrix Companies and a

stringent approval process. Plaintiffs license the use of the Jimi Hendrix trademarks and copyrights from a vast collection of copyrighted music, photographs and album covers. Plaintiffs' licensing and endorsement efforts encompass a wide variety of products such as Fender guitars, Dunlop guitar effects pedals, Pepsi Cola, Chanel, Tag Heuer watches, the Jimi Hendrix Park Foundation, the Experience Hendrix Tour, and Rock Band Video Games. Plaintiffs also endorse traditional merchandise, such as posters, prints, calendars, and other products.

29.     Since 1996 or earlier, the Hendrix Companies have used federally registered and common law trademarks, service marks, trade names and logos to identify Jimi Hendrix related promotional merchandise and services to the general consuming public through catalog sales, Internet websites, retail stores, and licensee sales. These are famous marks and widely recognized by the general public. Attached as Exhibit A is a list of worldwide registrations. The Plaintiffs also own the copyrights in the musical works and copyrights of Jimi Hendrix at issue in this case.

30.     The marks owned and used by the Hendrix Companies include, but are not limited to the following:   "JIMI HENDRIX", "THE JIMI HENDRIX EXPERIENCE",   "HENDRIX",   "EXPERIENCE   HENDRIX",   "AUTHENTIC HENDRIX", and the design marks of the signature of Jimi Hendrix, and an image (head or bust) of Jimi Hendrix, such as the following:







31.     Plaintiff Experience owns word, design, and composite marks, which are registered on the Principal Register of the United States Patent and Trademark Office (hereinafter, "USPTO"), and are incontestable pursuant to 15 U.S.C. §1065, a schedule of the trademarks are attached herein as Exhibit A. Plaintiffs have pending applications for JIMI HENDRIX in Class 35 for online retail services. Collectively, these marks shall be referenced herein as the "Hendrix Marks."

32.     Plaintiffs and their authorized licensees have made continuous, substantial and vigorous use and promotion of the Hendrix Marks in the marketplace, as well as other unregistered marks and indicia relating to Jimi

15

Hendrix.  Through substantial sales and promotion of goods and services under the Hendrix Marks, Plaintiffs are the recognized official source of Jimi Hendrix-related goods and services, and the Hendrix Marks are valuable and recognized symbols of Plaintiffs' goodwill.  Plaintiffs' Hendrix Marks are famous and well-known by consumers throughout the United States, and indeed the world.

33.    Through substantial and continuous sales and promotion of goods and services, the Plaintiffs have been the recognized source of Jimi Hendrix-related goods and services. The Plaintiffs' marks are well-known by consumers throughout the United States and elsewhere and continuously enforce their marks globally.

34.    Additionally, by Plaintiffs' sponsorship and promotion of charitable and educational events and private touring music, art, and multimedia events emphasizing the cultural and artistic legacy of Jimi Hendrix, the Plaintiffs' companies have associated their marks with Jimi Hendrix's innovative spirit and musical and artistic talent.

35.    The consuming public has come to identify the Hendrix Marks with the Plaintiffs, as the sole successors in interest to the Estate of Jimi Hendrix.

36.    Plaintiffs have successfully distinguished their products and services from unauthorized recordings, merchandise, public domain, and other products and services, by engaging in a significant effort to enforce their rights and remove unauthorized goods and merchandise from the marketplace, and by associating the Hendrix Marks with Plaintiffs' authorized products and services.

37.     The Hendrix Marks, in addition to being strong marks, are also famous as they are widely recognized by the general consuming public of the United States as a designation indicating a single source of goods or services.[6]

38.     Al Hendrix and, subsequently, Plaintiffs decided early in their business model not to license the Hendrix Marks, or Jimi Hendrix music, for use "in the promotion of alcohol, tobacco, illegal or recreational drug products" or for products related to "racist, sexist, hateful, violent, or sexual acts" as set forth in their License Style Guide.

**B.     Plaintiffs' Copyrights in "Purple Haze"**

39.     In January 1967, Jimi Hendrix created, composed, authorized, and wrote the original musical composition entitled "Purple Haze," which consists wholly of original material and was and is copyrightable matter under the law of the United States. On August 24, 1967, the Jimi Hendrix musical composition "Purple Haze" was registered and recorded with the United States Copyright Office – Registration No. Ep 11766. A claim of the renewal copyright in the musical composition "Purple Haze" was registered and recorded with the United States Copyright Office on January 9, 1995 – Registration No. RE 669-243.

40.     Plaintiff Experience is the assignee of all rights in and to the copyright registrations described hereinabove, i.e., RE 669-243.

---

[6] *See Experience Hendrix, LLC v. Electric Hendrix, LLC*, 07-338TSZ, 90 U.S.P.Q.2d 1883 2008 WL 3243896, *9 (W.D. Wash. 2008) ("The Court holds that the name Jimi Hendrix is a famous name and that it has acquired a secondary meaning"); *Experience Hendrix, LLC v. Hendrixlicensing.com, Ltd.*, 09-285Z, 97 U.S.P.Q.2d 1364, 2010 WL 2104239, *2 (W.D. Wash. 2010).

41.     From the date of creation through the date of registration, Plaintiff Experience has complied in all respects with the Copyright Act of 1976 and all other laws governing copyright with respect to the above-referenced copyright.

42.     Defendants have unlawfully used the musical composition in online advertising.

**C.     Hendrix Companies' Copyrights in "Axis: Bold As Love"**

43.     In 1993, MCA rereleased the Jimi Hendrix Experience album "Axis: Bold As Love". On October 4, 1993, this new album artwork was registered and recorded with the United States Copyright Office – Registration No. VA 609-735.

44.     These copyrighted graphics feature a signature that is prominently used by the Pitsicalis Defendants on the packaging of their "Jimi Hendrix Hot Sauce." An image of the album cover featuring the signature is below:



45.     In November of 1996, MCA assigned all rights in the copyright to the *Axis: Bold As Love* album cover artwork to Experience Hendrix. A copy of this assignment has been filed with the Copyright Office.

**D.    Hendrix Companies' Common Law**
      **Trademark Rights in the Hendrix Signature**

46.    In addition to their registered trademark in the Jimi Hendrix Signature, the Hendrix Companies have further common law trademark rights in variations of the Jimi Hendrix Signature, as seen above on the "Axis: Bold as Love" album cover and below on the wall of the Jimi Hendrix Exhibit at the Rock and Roll Hall of Fame:



**II.    INFRINGING CONDUCT UNDER THE CONTROL OF**
       **PITSICALIS AND THE OTHER DEFENDANTS**

47.    Plaintiffs allege that the Pitsicalis Defendants and third parties, who, in concert with the Pitsicalis Defendants, are engaging in a scheme to infringe upon the Hendrix Marks, trade off of the Hendrix Companies' goodwill, and unjustly enrich themselves by falsely indicating and suggesting the sponsorship, association, endorsement and/or affiliation with Plaintiffs, Jimi Hendrix and the Estate of Jimi Hendrix.

48.     Defendants have infringed Plaintiffs' copyrights and trademarks by inter alia: developing, marketing and selling through Jimi Electronics, Inc., a line of speakers called "Jimi Jams"; developing, marketing and selling "Jimi Cannabis Collection: Purple Haze" through Purple Cross Rx South Bay Corp., marijuana cigarettes featuring a logo that infringes upon the Hendrix Marks; developing, marketing, and selling "Jimi's Cannabis Collection: Jimi's Genetix," through Silver State Trading, Inc., a brand of marijuana strains and concentrates that infringes upon the Hendrix Marks; developing, marketing, and selling "Jimi's Cannabis Collection," through Nutritional High, Inc., a brand of cannabis-infused products, including gummy bears and hard candies, which infringe upon the Hendrix Marks; defrauding the public, through Firefly Brand Management, LLC website, by portraying themselves as licensed representatives of "Jimi Hendrix"; developing, marketing, and selling "Grizzly x Hendrix", through Zumiez, Inc., a lifestyle brand of t-shirts, blankets, pins, and skateboard grip tape that infringe upon the Hendrix Marks; developing, marketing, and selling "Grizzly x Hendrix", through Grizzly Griptape, Inc., a lifestyle brand of t-shirts, blankets, pins, and skateboard grip tape that infringe upon the Hendrix Marks; developing, marketing, and selling "Jimi's Cannabis Collection: Jimi's Meds," through Cannabis Science, Inc., a brand of cannabis products, including THC and CBD capsules, that infringe upon the Hendrix Marks; developing, marketing, and selling, through First Harvest Financial, Inc., rolling papers, bongs, dab rags, video games, and other ancillary marijuana products, which infringe upon the Hendrix Marks; developing,

marketing, and selling, through Green Cures and Botanical Distribution, Inc., a line
cannabis-infused skin care products and beverages, which infringe upon the
Hendrix Marks; developing, marketing, and selling "Jimi's Cannabis Collection
Jimi's Edibles," through Colorado Product Services, LLC, a brand of cannabis
infused edible products, which infringe upon the Hendrix Marks; developing,
marketing, and selling "Jimi Hendrix Hot Sauce," through Pepper Palace, Inc., a
line of hot sauces, which infringe upon the Hendrix Marks; developing, marketing,
and selling "Jimi Hendrix: Purple Haze Collection", through V-Syndicate, LLC, a
line of marijuana grinders that infringe upon the Hendrix Marks; developing,
marketing, and selling, through Zippo Manufacturing Company, a line of lighters
that infringe upon the Hendrix Marks; developing, marketing, and selling "e-njoint:
Jimi Revolution," through I-nvention LLC, a line of marijuana vaporizers that
infringe upon the Hendrix Marks; developing, marketing, and selling "Hazesticks,"
through Jacksam Corporation, a line of marijuana vaporizers, which infringe upon
the Hendrix Marks; developing, marketing and selling through C-Life, a line of t-
shirts which infringe upon the Hendrix Marks by <u>inter</u> <u>alia</u> using Plaintiffs'
trademarked signature on its company webpage:



### III.  THE PITSICALIS DEFENDANTS' NEW INFRINGING CONDUCT AND THEIR MULTIFACETED SCHEME TO DEFRAUD CONSUMERS, INVESTORS AND LICENSEES

#### A.  Defendants' Infringing Products And Their False Endorsement

49.    Undaunted by their previously failed and enjoined efforts to exploit the Hendrix Marks, Leon and the Pitsicalis Defendants have now aggressively escalated their conduct into a full scale assault on the Plaintiffs' trademark and copyrights that relate to Jimi Hendrix, through nothing less than a fraudulent business model and scheme designed to trade on the Hendrix Marks and copyrights in a manner designed to confuse consumers, investors and licensees.

50.    The Pitsicalis Defendants have openly, aggressively and falsely represented to investors, backers, and their distributor that they represent the "Jimi Hendrix brand."

51.    In or about 2014, Defendants licensed "Jimi Jams" for speakers. In or about 2015, it began licensing marijuana and in 2016 it began licensing food products, all of which use Plaintiffs' incontestable trademarks or otherwise suggested an affiliation with, endorsement by and/or sponsorship by Jimi Hendrix or Plaintiffs, in the promotion, packaging, marketing and advertisement of the products without Plaintiffs' permission (the "Infringing Products").

52.    The Pitsicalis Defendants have "partnered" with multiple individuals and entities including, but not limited to, Defendants Carmen Cottone a/k/a Carmen Andolina a/k/a Carm Cottone d/b/a Partners and Players and Dynasty Gourmet Foods (collectively the "Purple Haze Property Defendants") to advertise and sell a line of "Jimi" Jimi Hendrix products.

53.     Working together, the Purple Haze Property Defendants have created the illusion of an empire of "authentic" Jimi Hendrix goods which include Cannabis, edibles, food, wine, alcohol, "medicines," and electronic products. The business model is fraudulently based on the misrepresentation that these entities own the rights to certain Hendrix marks and to Plaintiffs' copyrights, a lie which they perpetuate throughout the various markets in which they hope to expand their business. The Defendants have utilized the Internet, spoken publicly and disseminated written materials which contain multiple instances of the false endorsement and sponsorship of the Plaintiffs and false affiliation with Jimi Hendrix and the Hendrix Estate of their products and businesses.

54.     The Purple Haze Property Defendants' unauthorized, intentional use of a confusingly similar logo to Plaintiffs' headshot logo and other trademarks and indicia have created a likelihood of confusion in consumers with Plaintiffs' Hendrix Marks ("Hendrix Marks" are defined above in Paragraph 31 of this Complaint), including Plaintiffs' registered stylized graphical mark of Jimi Hendrix's signature, Plaintiffs' "headshot" logo, and the combination of the Hendrix Marks used by Plaintiffs.  The Purple Haze Property Defendants use of Plaintiffs' marks, song and album titles, along with other elements, *in toto*, to advertise, promote, package and sell their products are intended to deceive and defraud the public and to pass off and palm off their Purple Haze Properties Infringing Products and other merchandise as being officially authorized by, endorsed by, or otherwise affiliated with the Plaintiffs, Jimi Hendrix, and the Hendrix Estate.

23

55.     As shown in the above images, the Purple Haze Property Defendants' unlawful actions are intentional and designed to capitalize on the goodwill, recognition and fame associated with the Plaintiffs' marks and rights that relate to Jimi Hendrix.  Those acts have tarnished and diluted the value of the marks by associating the Plaintiffs with the commercial sale of the Purple Haze Property Defendants' unauthorized alcohol products.  By this lawsuit, the Plaintiffs seek to permanently stop and enjoin the Purple Haze Property Defendants from infringing and misappropriating Plaintiffs' marks and goodwill, to disgorge all profits the Purple Haze Property Defendants have unlawfully made, and to obtain redress for the damage done to the Hendrix Companies and their marks.

B.      **Andrew Pitsicalis And His Fraudulent Statements**

56.     The Purple Haze Property Defendants' intent to create confusion is ongoing, and the claims identified herein include the conduct to date, as well as conduct to be uncovered prior to trial.

57.     In a television interview, Defendant Pitsicalis represented that: "We're Purple Haze Properties and we represent the greatest guitarist in Rock 'n' Roll history, Jimi Hendrix."

58.     In a video interview, Andrew Pitsicalis states: that "Purple Haze Properties is an intellectual property company of Jimi Hendrix."

59.     The Pitsicalis Defendants were fully aware their scheme would cause consumer confusion—indeed Andrew Pitsicalis' intended goal was to create the confusion by falsely suggesting an affiliation with the Hendrix Estate and Plaintiffs.

24

The Pitsicalis Defendants have also simply ignored the United States Patent and Trademark Office rejection of two "Jimi" trademark applications on the grounds that the proposed marks "**include[] matter which may falsely suggest a connection with Jimi Hendrix**" and proceeded with their infringing activity.

60.    Publicly available documents and social media postings confirm the Defendants' multiple infringements of Plaintiffs' intellectual property rights which include the following:

    i.    Defendants adopted and marketed the "JimiHendrixwine" Twitter handle.

    ii.    Defendants consistently use the hashtag "#JimiHendrix" as a way of advertising their products and connecting their products with the goodwill associated with Jimi Hendrix.

    iii.    Defendants used an unauthorized sound recording of "Purple Haze" written by Jimi Hendrix in an advertisement, without a license.

    iv.    On their website "purplehazeproperties.com," the Pitsicalis Defendants claim that they represent and manage the "proprietary intellectual property" for Jimi Hendrix.

    v.    In an interview , Defendant Pitsicalis stated: **"We're Purple Haze Properties, and we represent the greatest guitarist in Rock 'n' Roll history, Jimi Hendrix."**

    vi.    In an interview, Defendant Pitsicalis stated: **"I am CEO of Purple Haze Properties and Purple Haze Properties is an intellectual property company of Jimi Hendrix."**

    vii.    In an interview, Defendant Pitsicalis stated: **"I'm Andrew Pitsicalis. I'm the CEO of Purple Haze Properties and we represent one of the greatest celebrities in Rock 'n' Roll history, the late Jimi Hendrix."**

    viii.    On their website, Pitsicalis' agent, Firefly Brand Management states that they represent "Jimi Hendrix".

ix.   In a Press Release the Pitsicalis Defendants state: "Nutritional High Extends Exclusive Partnership for Jimi Hendrix Products."

x.   In an interview, Defendant Pitsicalis states that the Pitsicalis Defendants are **"the force behind Jimi."**

xi.   In an interview , Defendant Pitsicalis stated: **"I am CEO of Purple Haze Properties and Purple Haze Properties is an intellectual property company of Jimi Hendrix."**

xii.   In materials given to potential investors and licensees, the Pitsicalis Defendants state that they represent Jimi Hendrix and that they can use Jimi Hendrix to "help with endorsements, product brands, social media, events, fan base, and merchandise."

xiii.   In Defendant Pitsicalis' biography on the High Times Business Summit page it states: "As CEO of Purple Haze Properties, Andrew Pitsicalis has secured the intellectual property of the Jimi Hendrix estate for licensed products."

xiv.   The Purple Haze Property Defendants' intentional and blatant use of the word and mark "Jimi's" in promotional and advertising materials and on product labels to identify and brand their various Infringing Products explicitly suggests an endorsement or sponsorship by, and affiliation with Jimi Hendrix, the Hendrix Estate and/or Plaintiffs. None of these uses are authorized by Plaintiffs.

**C.   The Purple Haze Property Defendants' Use Their Infringing Website, Social Media and Video Channel to Unlawfully <u>Promote and Advertise the Sale of Their Infringing Products</u>**

61.   Not content with infringing upon Plaintiffs' intellectual property and falsely suggesting that Plaintiffs, Jimi Hendrix and/or the Jimi Hendrix Estate are associated with them or endorse their Infringing Products, the Purple Haze Property Defendants have also tarnished Plaintiffs' marks.  Examples include, but are not limited to (a) the Purple Haze Property Defendants' use of Jimi Hendrix's name and the goodwill, recognition and fame associated with the Hendrix

26

Companies' marks and other rights that relate to Jimi Hendrix in association with the branding of unauthorized alcoholic and drug-related products, which the Hendrix Companies expressly prohibit, (b) the Purple Haze Property Defendants' advertising their alleged connection with Jimi Hendrix through videos of Defendant Pitsicalis smoking marijuana, and (c) the Purple Haze Property Defendants' use of images of Jimi drinking and smoking, with no concern for the unfortunate association that drugs and alcohol have with Jimi's death, for the advertisement and branding of their Infringing Products.

62.     In or about early 2016, or late 2015 the Purple Haze Property Defendants began a campaign to falsely promote their alcoholic beverages, marijuana products, and food products as being specifically associated with Jimi Hendrix and the Hendrix Marks.

63.     On information and belief, Defendant Purple Haze Properties marketing and promotional materials, labels, tags, containers, and statements related to the Infringing Products are personally coordinated by Defendant Pitsicalis, in a concerted effort to confuse the public and to unjustly profit from the goodwill associated with Plaintiffs' business and the Hendrix Marks.

64.     The Purple Haze Property Defendants have created and distributed marketing and promotional materials, and labeled their alcohol, marijuana, and food products and other products in such a way that has caused confusion, and is likely to continue to cause confusion, in the marketplace as to the source, sponsorship, affiliation, and connection of the Purple Haze Property Defendants'

products and services with those of Plaintiffs, thus causing damage to Plaintiffs. The Purple Haze Property Defendants' acts include, but are not limited to:

    a.    Plaintiffs have used the Jimi Hendrix registered headshot logo to promote and sell their Jimi Hendrix licensed products since 1996. The Purple Haze Property Defendants' use of variations of that Jimi Hendrix bust or "headshot," as part of the words element of each of their products, to promote and sell their infringing products has created a likelihood of confusion with Plaintiffs' registered Jimi Hendrix "headshot" logo.

    b.    Adopting and marketing "jimiwines," "jimiteas," "jimimeds," "purplehazeproperties," "jimismedicatedmacaroons," and "jimifoods" as Defendants' numerous websites.

    c.    Adopting and marketing "JimiHendrixwine" as The Purple Haze Property Defendants' twitter handle.

65.    In addition to its overwhelming use of the Hendrix Marks and indicia throughout their advertising and promotional materials, websites, social media sites, and logos, the Purple Haze Property Defendants featured, without permission from Plaintiffs, the Hendrix Song "Purple Haze" in a video advertisement for "Jimi Foods". That is a direct infringement of Plaintiffs copyright in that song.

**D.    The Defendants' Bad Faith and Acts of Tarnishment, Dilution, False Designation of Origin, and False Endorsement In the Marketing of the Infringing Products in Connection With the <u>Hendrix Marks</u>**

66.    The Purple Haze Properties Defendants' bad faith and willful acts of infringement, tarnishment, dilution, false designation of origin, and false endorsement are ongoing, and the claims identified herein include the conduct to date, as well as continuing ongoing conduct by the Purple Haze Property Defendants.

67.     Within multiple marketing and promotional videos, and images published on their own social media, the social media of their agents and affiliates, and on the Internet, the Purple Haze Properties Defendants have used the Plaintiffs' Hendrix Marks and other Jimi Hendrix-related indicia in a manner intended to create a likelihood of confusion and falsely suggest an endorsement by or affiliation between the Purple Haze Property Defendants' Infringing Products and Plaintiffs and/or the Hendrix Estate. The Purple Haze Defendants' entire publicity and advertising strategy is designed to capitalize on the enormous goodwill of the Plaintiffs' Hendrix brand. The videos, and images on Purple Haze Properties Facebook page include, but are not limited to, marketing videos and interviews which feature individuals smoking marijuana.

### E.  Likelihood of Confusion and False Connection Found by USPTO

68.     The Pitsicalis Defendants attempted to further their scheme by applying through Jimi Electronics Inc. for federal trademark registrations of the trademark JIMI and JIMI JAMS for audio speakers, by filing U.S. Applications Serial Nos. 86617497 and 86617500 at the U.S. Patent and Trademark Office - which applications have been rejected by the USPTO for the very reasons set forth in this lawsuit.

69.     Both "Jimi" and "Jimi Jams" trademark applications were rejected because of a likelihood of confusion and false designation with Plaintiffs' registered marks.

70.    The Examiner cited **forty-three (43) of Plaintiffs' registrations** as likely to cause confusion.

71.    Trademark Act Section 2(d) bars registration if an applied-for mark so resembles a registered mark that it is likely a potential consumer would be confused, mistaken or deceived.  In the present case applicant's mark is confusingly similar to the registered marks because it encompasses the wording Jimi (denoting an association with Jimi Hendrix).

72.    The Trademark Examiner found:

**In the present case, applicant's mark is confusingly similar to the registered marks because its mark encompasses the wording JIMI (denoting an association with JIMI HENDRIX) and/or a likeness of JIMI HENDRIX, giving the impression that the goods and services under the given marks may emanate from a common source.**

73.    The Examiner also issued a second basis for refusal:

**<u>SECTION 2(c) REFUSAL – FALSE CONNECTION</u>**

**Registration is refused because the applied-for mark consists of or includes matter which may falsely suggest a connection with Jimi Hendrix. Although Jimi Hendrix is not connected with the goods and/or services provided by applicant under the applied-for mark, Jimi Hendrix is so famous that consumers would presume a connection. Trademark Act Section 2(a), 15 U.S.C. §1052(a); *see* TMEP §1203.03, (c). *See generally Univ. Of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Cotter & Co.*, 228 USPQ 202 (TTAB 1985); *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428 (TTAB 1985).**

74.    Notwithstanding these rejections, the Defendants willfully continued to infringe Plaintiffs' trademarks.

## PLAINTIFFS' CLAIMS AGAINST DEFENDANTS

### FIRST CLAIM
### (Federal Trademark Infringement, 15 U.S.C. § 1114)
### Against All Defendants

75.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

76.    Plaintiffs have adopted and used in interstate commerce the Hendrix Marks for a broad range of goods and services, including:  clothing and accessories, musical recordings (e.g., CDs) and videos (e.g., DVDs), printed matter (books, postcards, posters, etc.), and online (website) and entertainment services.  Such registered marks are well-known, and they have been used continuously since long prior to Defendants' use of words and marks related to Jimi Hendrix.

77.    The Hendrix Marks are prima facie evidence of Plaintiff Experience's exclusive rights in and ownership of the marks shown therein throughout the United States, and the validity and the registrations of such marks.   The Registrations set forth in Paragraph 31 are incontestable and are "conclusive evidence" of Plaintiff Experience's exclusive right to use such registered marks on the goods and services listed in those registrations under 15 U.S.C. § 1115(b).

78.    Defendants' marks and indicia of origin, including their unauthorized use of the Hendrix bust logo on numerous products, are confusingly similar to the Plaintiffs' Hendrix Marks and are not authorized by Plaintiffs. Defendants' unauthorized use of such words and marks are likely to cause confusion, to cause mistake, and to deceive consumers as to the source of the goods and services offered

31

by Defendants, in that consumers will likely associate, and have actually associated, Defendants' products and services with that of Plaintiffs', all to the severe detriment of Plaintiffs.

79.    Defendants' infringing conduct described herein is intentional, willful, and designed to mislead, deceive, and confuse the consuming public, and to capitalize on the goodwill associated with Plaintiffs' Hendrix Marks and the Hendrix Companies, and is intended to palm off Defendants' goods as those of Plaintiffs.

80.    The use by Defendant C-Life of the Jimi Hendrix signature trademark in violation of Plaintiffs' proprietary rights is likely to cause confusion or mistake or deception to the consuming public regarding any affiliation of Defendants C-Life with Plaintiff, particularly where an ex-licensee continues to use a mark after its license expires.

81.    Defendants have violated, and continue to violate, the rights of Plaintiffs under the U.S. Trademark Act, giving rise to a cause of action under 15 U.S.C. § 1114(1).

82.    Unless enjoined and restrained by this Court, Defendants will continue to engage in such unlawful conduct.  Plaintiffs have no adequate remedy at law in that Defendants will continue their infringing conduct, as alleged above, in violation of 15 U.S.C. § 1114.  Plaintiffs therefore seek injunctive relief, pursuant to 15 U.S.C. § 1116, precluding Defendants from further acts of infringement and from any further use, reference to or association with the Hendrix Marks.  Plaintiffs seek

such other injunctive relief as may be reasonable and appropriate to protect against further infringement of their rights in and to the registered Hendrix Marks.

83.    Plaintiffs further allege that they have been damaged as a result of Defendants' infringing actions as alleged herein.   Plaintiffs are entitled to recover their damages, as well as Defendants' profits, treble damages, and statutory damages.   Attorney fees are authorized by 15 U.S.C. § 1117.   Destruction of infringing articles is authorized by 15 U.S.C. § 1118.   Plaintiffs request that the court order the Defendants to withdraw any pending applications, and not to file further USPTO applications for marks infringing on Plaintiffs' rights.

## SECOND CLAIM
### (False Designation of Association, Origin, False Endorsement, Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)) Against All Defendants

84.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

85.    The marks "Jimi Hendrix," "Jimi" and "Hendrix" and associated Hendrix Marks have been extensively advertised and promoted throughout the world for almost fifty (50) years in connection with Jimi's music, entertainment, and related goods and services and, as a result of this advertising and promotion, the Hendrix Marks are recognized throughout worldwide trading areas and channels of trade as a famous and distinctive mark which identifies the source of the entertainment and related goods and services of Jimi Hendrix.   The Hendrix Marks are famous and distinctive within the meaning of U.S. trademark law, including 15 U.S.C. §§1125 and 1127.

33

86.     At all times pertinent to this action, Plaintiffs have had the sole right throughout the world to use and publish and permit others to publish the Hendrix Marks, and Plaintiffs have not agreed to be affiliated with or endorse the goods or services of the Defendants.

87.     Defendants' conduct in violation of 15 U.S.C. §1125 is as follows:

i.       Defendants advertise and offer for sale, in interstate commerce, unauthorized and infringing goods and services through use of the Hendrix Marks, and confusingly similar marks and references. Defendants' actions are intentional and designed to capitalize on the goodwill, recognition, and fame associated with the Hendrix Marks owned by Plaintiffs.  Defendants' actions, including but not limited to using the name "Jimi" and "Jimi Hendrix" and Hendrix signature in an effort to brand their products in a manner falsely suggesting affiliation, sponsorship and/or endorsement by Jimi Hendrix, Plaintiffs and/or the Estate of Jimi Hendrix.  These actions together create a false representation and likelihood of confusion as to the origin, source, sponsorship, endorsement, affiliation, and authenticity of the infringing products and services they are advertising and offering for sale.  Defendants know that their actions are creating confusion among the consuming public and by their actions intend to confuse, defraud, and deceive the consuming public into believing that Plaintiffs

produce, sponsor, or endorse Defendants' products and services, when they do not.

ii.     Defendants' unauthorized use, in interstate commerce of indicia of the Hendrix trademarks, including Jimi Hendrix's signature and copyrighted images, and/or the Hendrix Marks in connection with the marketing and sale of its products, constitutes a false designation of origin and a false association that wrongfully and falsely designates the products offered thereunder as originating from the Plaintiffs and/or Jimi Hendrix, or being associated, or connected with or approved by or sponsored by the Plaintiffs and/or Jimi Hendrix, which is likely to confuse, mislead, or deceive the consuming public and trade by creating the false impression that Defendants' products and services were approved, sponsored, endorsed, guaranteed by and/or are in some way affiliated with the Plaintiffs.

iii.    Defendant C-Life has violated 15 U.S.C. § 1125(a) by continuing to use in commerce in connection with their products, a false designation of origin, namely, the Jimi Hendrix signature trademark, without Plaintiffs' authorization and with the intent of passing off and confusing the public into believing that Defendant continues to have a license with Plaintiffs and are, in any way, related to and affiliated with Plaintiffs. Further, Defendant C-Life, in its previous License Agreement with Plaintiffs, expressly acknowledged the injury to

Plaintiffs complained of herein. The afore-described activities of Defendant C-Life constitute unfair competition. Indeed, Defendant C-Life willfully intended to trade on Plaintiffs' reputation and to cause dilution of the mark and confusion as to its source.

88.     As a direct and proximate result of Defendants' wrongful acts, Plaintiffs have suffered and continue to suffer and/or are likely to suffer damage to their trademarks, business reputation, and goodwill. Defendants will continue, unless restrained, to conduct their business using Hendrix trademarks, including his signature and the Hendrix Marks or the like confusingly similar to the Hendrix Marks, and will continue to cause irreparable harm to the Plaintiffs.

89.     Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks.  Plaintiffs further seek an injunction ordering that the past and misleading representations by Defendants be corrected in writing and that all profits made while engaging in infringing conduct be held in constructive trust for Plaintiffs.  Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect further infringement of its rights in and to the Hendrix Marks.

90.     Defendants' actions have already caused confusion in the marketplace, and are likely to continue to cause consumer confusion with the Hendrix Companies' uses of the Hendrix Intellectual Property; to cause the trade and public to believe that Defendants' goods are affiliated with, or authorized, sponsored or

endorsed by, the Hendrix Companies, and/or its authorized licensees, which they are not; and to result in the Defendants' unfairly and unlawfully benefitting from the Hendrix Companies' goodwill, all in violation of Section 43(a) of the Lanham Act, as amended 15 U.S.C. § 1125(a).

91.    Defendants are making implied and explicitly false and misleading statements that Defendants and their products and services are affiliated with, sponsored by, or endorsed by Plaintiffs, and those statements are material in the consumer's purchasing decisions or concern a critical attribute of those products.

92.    Defendants' manner of use, and continuing use today, in interstate commerce of the name and image of Jimi Hendrix in connection with the branding, marketing and sale of their products constitutes a violation of 15 U.S.C. § 1125(a) in that it creates a false designation of origin as to the goods and services advertised, distributed, offered and provided by Defendants, which is likely to confuse, mislead, or deceive the consuming public and trade by creating the false impression that Defendants products and services were approved, sponsored, endorsed, guaranteed by and/or are in some way affiliated with, Jimi Hendrix and/or Plaintiff.

93.    Defendants' use, and continuing use, in interstate commerce of the name and image of Jimi Hendrix in connection with the branding, marketing, promotion, advertising and sale of their products also constitutes a false or misleading description or representation in interstate commerce, in violation of §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

94.    Defendants' knowing and intentional express and/or implied falsehoods that their products are sponsored, endorsed or otherwise connected with Plaintiffs, Jimi Hendrix, and/or the Hendrix Estate constitute false descriptions or representations of fact, in violation of 15 U.S.C. § 1125(a).

95.    Defendants' acts have caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' Hendrix Marks.

96.    Plaintiffs have suffered damages and Defendants have obtained profits and/or unjust enrichment as a result of Defendants' false advertising.

97.    Defendants' unlawful registration and use of the domain names infringes Plaintiffs' Hendrix Marks, and irreparable injures Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparable injury and harm, for which they will have no adequate remedy at law.

98.    As a direct and proximate result of the Defendants' wrongful acts, the Hendrix Plaintiffs suffered and continue to suffer and/or is likely to suffer damage to the Hendrix Marks, their reputation, good will, and ability to exploit and license others to exploit such marks.

99.    As a direct and proximate result of the foregoing conduct of Defendants, Plaintiffs are entitled pursuant to 15 U.S.C. § 1117(a) to the recovery of: (1) Defendants' profits related to Defendants' products and services that used Plaintiffs trademarks; (2) and damages sustained by Plaintiffs as a result of Defendants' conduct, including but not limited to the fair market value of Plaintiffs'

intellectual property misappropriated by Defendants, the precise amount of which shall be established by Plaintiffs at trial; and (3) Plaintiffs' costs of suit.

100.   Plaintiffs are informed and believe, and based thereon allege, that since Defendants have committed the acts alleged above with knowledge of Plaintiffs' prior right to and use of the subject marks and with the willful intent to trade on Jimi Hendrix's and Plaintiffs' goodwill and reputation, Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

101.   Unless enjoined and restrained by this Court, Defendants will continue to engage in such unlawful conduct. Pursuant to  15 U.S.C. § 1116, Plaintiffs seek injunctive relief precluding Defendants from further acts of false designation of origin, false designation of association, false endorsement, and unfair competition and from any further use, reference to or association with the Hendrix Marks. Plaintiffs seek such other injunctive relief as may be reasonable and appropriate to protect against further infringement of their rights.

102.   Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM
### (Trademark Dilution by Blurring,
### Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))
### Against All Defendants

103.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

104.   Plaintiffs' Hendrix Marks are famous and well-known in the United States.

105.   Defendants have made commercial use of Plaintiffs' famous marks, and those confusingly similar to them, in the marketing of their products and services, which Defendants have used and transported in United Slates interstate commerce.   Defendants' use began after Plaintiffs' Hendrix Marks had become famous.

106.   Defendants' acts have lessened the capacity of Plaintiffs' well-known or famous Hendrix Marks to identify and distinguish the goods and services of Plaintiffs.  Defendants' acts have blurred and diluted the unique association which as heretofore existed between Plaintiffs' well-known or famous marks and the goods and services made, licensed, advertised, or sponsored by Plaintiffs, to the detriment of Plaintiffs.  Defendants committed these acts willfully and with the intent to trade on the reputation and goodwill of Plaintiffs and to dilute Plaintiffs' famous marks by blurring their association with Plaintiffs as the authorized source of Jimi Hendrix music, goods, and services.

107.   Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined.   Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their injuries.   Plaintiffs therefore seek injunctive relief precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks.   Plaintiffs seek

destruction of infringing articles, as authorized by 15 U.S.C. § 1118, and an injunction against further infringement and dilution pursuant to 15 U.S.C. § 1116.

108.   By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and goodwill and the loss of sales and profits Plaintiffs would have made but for Defendants' acts.   Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(5) and 1117.

109.   Because of the willful nature of the Defendants wrongful acts, the Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM
### (Trademark Dilution by Tarnishment
### Under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c))
### Against All Defendants

110.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

111.   Defendants' acts have tarnished Plaintiffs' well-known or famous marks by associating Plaintiffs (and their otherwise authorized goods and services) with the commercial sale of alcohol and other unauthorized goods and services.

112.   Furthermore, Defendants' acts are likely to harm the reputation of, tarnish, and further dilute Plaintiffs' Hendrix Marks, in that any defect, objection, or fault found with Defendants' products, services, and marketing efforts will necessarily reflect upon, and seriously injure, the business reputation of Plaintiffs and tarnish the Hendrix Marks, and therefore damage Plaintiffs in violation of Section 43(c) of the Trademark Act, 15 U.S.C. § 1125(c), to the detriment of

Plaintiffs.  Defendants committed these acts willfully and with the intent to trade on the reputation and good will of Plaintiffs and to cause dilution of Plaintiffs' famous marks by tarnishing those marks, and Plaintiffs, by association with them.

113.   Defendants' use will irreparably harm Plaintiffs and will continue unless enjoined in this Court.  Plaintiffs' remedy at law is not adequate to fully compensate Plaintiffs for their injuries.  Plaintiffs therefore seek injunctive relief, pursuant to 15 U.S.C. § 1116, precluding Defendants from further acts of infringement and from any further use and reference to or association with Plaintiffs and their marks.  Plaintiffs also seek destruction of infringing articles, as authorized by 15 U.S.C. § 1118.

114.   By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and good will and the loss of sales and profits Plaintiffs would have made but for Defendants' acts.   Plaintiffs seek damages and attorney fees, as authorized under 15 U.S.C. §§ 1125(c)(5) and 1117.

115.   Because of the willful nature of the Defendants wrongful acts, the Plaintiffs are entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117.

### FIFTH CLAIM
**(Federal Cyber Piracy Under Section 43(d) of the Lanham Act 15 U.S.C. §1125(d))**
**Against Defendants Andrew Pitsicalis, Leon Hendrix, Purple Haze Properties, and Carmen Cottone a/k/a Carmen Andolina a/k/a Carm Cottone d/b/a Partners and Players and Dynasty Gourmet Foods**

116.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

42

117.    Defendants have registered, trafficked in and used the domain names: jimifoods.com; jimiwines.com; jimielectronics.com, jimismeds.com, and jimiteas.com.

118.    Defendants' domain names incorporate Plaintiffs' federal registered and incontestable trademarks.

119.    Defendants have registered and are using the domain names jimifoods.com; jimiwines.com; jimielectronics.com, jimismeds.com, and jimiteas.com without Plaintiffs' authorization. And in a bad faith attempt to profit from Plaintiffs' Hendrix Marks and to deceive consumers, in violation of 15 U.S.C. §1125(d).

120.    Plaintiffs' Hendrix Marks were distinctive and famous at the time Defendants registered the domain names and remain so today.

121.    Defendants' domain names do not resolve to a website owned by Plaintiffs. Rather, they resolve to websites controlled by Defendants.

122.    Defendants knew that the use of the domain names are not fair use and are unlawful.

123.    Defendants' unlawful registration and use of the domain names infringes Plaintiffs' Hendrix Marks, and irreparable injures Plaintiffs' business, reputation and goodwill. Unless Defendants are enjoined from their wrongful conduct, Plaintiffs and the public will continue to suffer irreparable injury and harm, for which they will have no adequate remedy at law.

## SIXTH CLAIM
### (Infringement of Common Law Trademark Rights)
### Against All Defendants

124.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

125.   Plaintiffs own and enjoy rights in the trademarks registered, incontestable "headshot" logo, and the Jimi Hendrix signature and combinations of such marks, as well as other unregistered Hendrix Marks including but not limited to variations on the Jimi Hendrix signature.  The acts of Defendants alleged herein constitute unfair competition and an infringement of Plaintiffs' common law rights in the Hendrix Marks.

126.   Plaintiffs' rights are superior to any rights that Defendants may claim in and to the same of similar marks, in that the marks are distinctive, or have achieved secondary meaning in the marketplace, and have been used continuously by Plaintiffs to identify Plaintiffs' goods and to distinguish them from others.  Said Hendrix Marks have come to indicate to purchasers that the goods in question are authorized and produced, sponsored, or endorsed by the Hendrix Companies established by the sole heir of Jimi Hendrix's rights and progenies.

127.  The Defendants' use of the Hendrix Marks and Experience's copyrighted material, to advertise and sell products and services in New York and elsewhere throughout the United States, is intentional and designed to deceive the public into believing that the goods sold by Defendants are made by, approved by, sponsored by, or affiliated with Plaintiffs.  Defendants' acts, as alleged herein, were

committed with the intent to deceive and defraud the public and to pass off and palm off Defendants' goods and services, including wine, beer, marijuana, food, merchandise, apparel, and licensing rights, as authorized by Plaintiffs and Jimi Hendrix's heirs.

128.   Defendants' infringement is believed to be willful, and will continue unless enjoined by this Court.  Plaintiffs therefore seek equitable relief in the form of an injunction precluding Defendants from further acts of infringement and from any further use, and reference to or association with Plaintiffs and their marks. Plaintiffs further seek an injunction ordering that the past infringements be corrected in writing and that all profits from Defendants' infringing acts be held in constructive trust for Plaintiffs.  Plaintiffs further seek destruction of infringing articles and such other injunctive relief as may be reasonable and appropriate to protect further infringement of its rights in and to the Hendrix Marks.

129.   Defendant C-Life's continuing use of Plaintiffs' trademarks after the expiration of its License Agreement is likely to cause confusion as to Defendant's source in that the consuming public will be likely to associate or has associated Defendant's business with, and as originating with, Plaintiffs, all to the detriment of Plaintiffs, as a matter of law.

130.   Further, by continuing to use Plaintiffs' trademarks after the expiration of its previous License Agreement, Defendant C-Life is guilty of unfair competition, deceptive advertising, and unfair trade practices, in violation of the

New York common law of unfair competition, causing Plaintiff damages and loss of profits.

131.   By reason of Defendants' acts alleged herein, Plaintiffs have, and will suffer damage to their business, reputation, and good will and the other damages. Plaintiffs seek damages in an amount to be determined at trial.

## SEVENTH CLAIM
**(Copyright Infringement, 17 U.S.C. § 501, _et seq._)**
**Against Defendants Andrew Pitsicalis, Leon Hendrix, Purple Haze**
**Properties, and Carmen Cottone a/k/a Carmen Andolina a/k/a Carm**
**Cottone d/b/a Partners and Players and Dynasty Gourmet Foods**

132.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

133.   At all relevant times, Plaintiffs are and have been the rightful owners and/or administrators of the copyrights in and to the musical composition "Purple Haze."

134.   As set forth hereinabove, Plaintiff Experience is the successor in interest to the United States Copyright registration RE 692-837 filed pursuant to 17 U.S.C. §§ 408 and 409 for the musical composition "Purple Haze" issued on January 9, 1995. The musical composition was originally registered on October 20, 1967 and bears registration number EP 242-530.

135.   Defendants Pitsicalis, Hendrix, and Purple Haze Properties have no license or other form of permission to copy, duplicate, publish, synch, or claim copyright ownership in the Song "Purple Haze."

136. Defendants Pisticalis, Hendrix, and Purple Haze Properties' unauthorized exploitations of the musical composition "Purple Haze" in their infringing advertisement is in derogation of and injurious to Plaintiffs' exclusive rights as the owner and/or administrator of the copyrights on the musical composition, all to the Plaintiffs' substantial damage.

137. The Plaintiffs have further rights in the graphics from the album "Axis: Bold As Love," Registration No. VA 609-735.

138. Defendants Pitsicalis, Hendrix, and Purple Haze Properties have no license or other form of permission to copy, duplicate, publish, or claim copyright ownership in the Jimi Hendrix signature they feature on their packaging.

139. Defendants Pitsicalis, Hendrix, and Purple Haze Properties' unauthorized exploitations of the artwork from "Axis: Bold As Love" on their hot sauces distributed by Pepper Palace, Inc. infringing packaging is in derogation of and injurious to Plaintiffs' exclusive rights as the owner and/or administrator of the copyright on the visual work, all to the Plaintiffs' substantial damage.

140. By reason of the foregoing acts of copyright infringement, Plaintiffs are entitled both to a permanent injunction enjoining Defendants from continuing the aforesaid acts of infringement, and to an award of damages in an amount to be proved at trial.

141. Defendants acts of copyright infringement described above have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights pursuant to 17 U.S.C. § 504.

142.   As a direct and proximate result of Defendants' infringements of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to damages and Defendants profits pursuant to 17 U.S.C. § 504(b) for each infringement.

143.   Alternatively, Plaintiffs are entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

144.   Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

**EIGHTH CLAIM**
**(Contributory Infringement)**
**Against Defendants Andrew Pitsicalis and Leon Hendrix**

145.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

146.   Defendants Pitsicalis and Leon Hendrix have or are, on information and belief, personally inducing, encouraging, facilitating, directing or controlling the infringing activities of Defendant Purple Haze Properties, and are benefiting by such acts.

147.   Defendants Pitsicalis and Hendrix, as owners, officers and/or principals of Defendant Purple Haze Properties, had and have the right and ability to supervise, control and/or monitor the direct infringing conduct of Defendant Purple Haze Properties by, inter alia, refusing to allow Defendant Purple Haze

Properties to adopt and use the Hendrix Marks and Copyrights in association with products offered by Purple Haze Properties. Defendants Pitsicalis and Hendrix have failed to exercise their right and ability in that regard. As a direct and proximate result of Defendants Pitsicalis and Hendrix's illegal actions, Defendant Purple Haze Properties is presently infringing the Hendrix Marks and Copyrights.

148.   Through their conduct, Defendants Pitsicalis and Hendrix have engaged in the business of knowingly and systematically inducing, causing and materially contributing to the Defendant Purple Haze Properties' knowing and intentional unauthorized uses of the Hendrix Marks and Copyright in association with the products sold by Purple Haze Properties. Defendants' Pitsicalis and Hendrix conduct has been willful, intentional and purposeful, in disregard of an indifferent to the rights of Plaintiffs.

149.   Defendants Pitsicalis and Hendrix's conduct constitutes contributory infringement of the Hendrix Marks and Copyright.

150.   Defendants Pitsicalis and Hendrix's willful and intentional acts of contributory infringement have caused and are causing great and irreparable injury and damage to Plaintiffs' business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

151.   By reason of the foregoing, Plaintiffs are entitled to injunctive relief against Defendants Pitsicalis and Hendrix's and anyone acting in concert or participation with them, to restrain further acts of infringement and to destroy all

infringing articles, and after trial, to recover any damages based on Defendants Pitsicalis and Hendrix's aforesaid acts, to recover enhanced damages based on Defendants Pitsicalis and Hendrix's willful, intentional, and/or grossly negligent acts, and to recover Plaintiffs' attorneys fees and prejudgment interest due to the exceptional nature of the acts complained in this Complaint, all pursuant to 15 U.S.C. § 1117 and 17 U.S.C. §§ 504-505.   Destruction of infringing articles is authorized by 15 U.S.C. § 1118. Damages for Copyright Infringements is authorized by 17 U.S.C. § 504.

## NINTH CLAIM
### (Vicarious Infringement)
### Against Defendants Pitsicalis and Hendrix

152.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

153.   Defendants Pitsicalis and Hendrix, as owners, officers and/or principals of Defendant Purple Haze Properties, had and have the right and ability to supervise, control and/or monitor the direct infringing conduct of Defendant Purple Haze Properties by, inter alia, refusing to allow Defendant Purple Haze Properties to adopt and use the Hendrix Mark or Copyrights in association with products offered by Purple Haze Properties. Defendants Pitsicalis and Hendrix have failed to exercise their right and ability in that regard. As a direct and proximate result of Defendants Pitsicalis and Hendrix illegal actions, Defendant Purple Haze Properties is presently infringing the Hendrix Marks and Copyrights.

154. Defendants Pitsicalis and Hendrix, as officers and/or principals of Defendant Purple Haze Properties, derive substantial financial benefit from Defendant Purple Haze Properties' infringement of the Hendrix Marks and Copyrights. Defendant Purple Haze Properties is able to designate its products as being derived from or affiliated with those of the Plaintiffs without incurring the costs associated with licensing the use of the Marks. Defendant Purple Haze Property has also benefitted from using "Purple Haze" in an advertisement without a license.

155. Defendants' Pitsicalis and Hendrix conduct has been willful, intentional and purposeful, in disregard of the rights of Plaintiffs.

156. Defendants' Pitsicalis and Hendrix all had (i) the right and ability to control the infringing activity and (ii) a direct financial benefit from that activity.

157. Defendants Pitsicalis and Hendrix conduct constitutes vicarious infringement of the Hendrix Marks and Copyrights.

158. Defendants' Pitsicalis and Hendrix willful and intentional acts of vicarious infringement have caused and are causing great and irreparable injury and damage to Plaintiffs' business and its goodwill and reputation in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury and damage, leaving Plaintiffs with no adequate remedy at law.

159. By reason of the foregoing, Plaintiffs are entitled to injunctive relief against Defendants Pitsicalis and Hendrix and anyone acting in concert or participation with them, to restrain further acts of infringement and to destroy all

infringing articles, and after trial, to recover any damages based on Defendants' Pitsicalis and Hendrix aforesaid acts, to recover enhanced damages based on Defendants' Pitsicalis and Hendrix willful, intentional, and/or grossly negligent acts, and to recover Plaintiffs' attorneys fees and prejudgment interest due to the exceptional nature of the acts complained in this Complaint, all pursuant to 15 U.S.C. § 1117 and 17 U.S.C. §§ 504-505. Destruction of infringing articles is authorized by 15 U.S.C. § 1118. Damages for Copyright Infringements is authorized by 17 U.S.C. § 504.

### TENTH CLAIM
**(Deceptive Acts, N.Y. Gen. Bus. Law § 349)**
**Against All Defendants**

160.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

161.    New York General Business Law Section 349 (GBL § 349) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state..."

162.    The conduct of the Defendants alleged herein constitutes recurring, "unlawful," deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labling, marketing, and promoting their Products with Jimi Hendrix and the Hendrix Marks and Copyrights.

163.    There is no adequate remedy at law.

164.    Defendants misleadingly, inaccurately, and deceptively presents its Products to consumers.

165.    Defendants' improper conduct –including labeling and advertising their Products as "representing" Jimi Hendrix and having a license from the "Estate of Jimi Hendrix" is misleading in a material way. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

166.    Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiffs have been damaged thereby.

167.    As a result of Defendants' recurring "unlawful" deceptive acts and practices, Plaintiffs are entitled to monetary, compensatory, and treble and punitive damages, injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## ELEVENTH CLAIM
### (Violation of New York Gen. Bus. Law § 350)
### Against All Defendants

168.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as though fully set forth herein.

169.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful."

170.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

"The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . ."

171.   Defendants' labeling and advertisements contain untrue and materially misleading statements concerning the relationship between Defendants' Products and Plaintiffs Marks.

172.   Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

173.   Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

174.   Defendants made the material misrepresentations described in this Complaint in Defendants' advertising and on their products' packaging and labeling.

175.   As a result of Defendants' recurring acts of false advertising, Plaintiffs are entitled to recover their actual damages and, because of Defendants' willful and knowing violation of NY GBL § 350, treble damages, up to ten thousand dollars. Plaintiffs are further entitled to injunctive relief and attorneys' fees and costs.

## TWELFTH CLAIM
### (Dilution N.Y. Gen. Bus. Law § 360-l)
### Against All Defendants

176.   Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

177.   Plaintiffs' Hendrix Marks are famous and well-known in New York and throughout the United States.

178.   Defendants' actions described above, all occurring after the Hendrix Marks became famous and distinctive, are likely to dilute the distinctive quality of the Hendrix Marks in violation of N.Y. Gen. Bus. Law § 360-l.

179.   Defendant C-Life's continued use of Plaintiffs' Marks after the expiration of its previous License Agreement has injured and likely will, unless enjoined by this Court, continue to cause injury to Plaintiffs' business reputation and will dilute the distinctive nature of Plaintiffs' marks in violation of N.Y. Gen. Bus. Law § 360-l.

180.   On information and belief, the actions of Defendants described above, at all times relevant to this action, have been, and continue to be, willful. Defendant was put on notice in multiple instances of the Hendrix Companies' objection to Defendants' uses of the Hendrix Intellectual Property, but have used and continue to use the Hendrix Intellectual Property in bad faith, and in deliberate and willful disregard for the Hendrix Companies' exclusive rights therein.

181.   As a direct and proximate result of the actions of Defendant alleged above, the Hendrix Companies have been damaged and will continue to be damaged.

### THIRTEENTH CLAIM
### (Alter Ego Liability)
### Against Defendants Pitsicalis and Leon Hendrix

182.   Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as though fully set forth herein.

183.   Defendants Pitsicalis and Leon Hendrix are liable to Plaintiffs for Purple Haze Properties' conduct as the alter egos of Purple Haze Properties because, among other things: (a) Pitsicalis and Hendrix exercise complete domination and control over Purple Haze Properties; (b) Pitsicalis and Hendrix caused Defendant Purple Haze Properties to engage in the infringing conduct described herein; (c) the purported separate existence of Purple Haze Properties is a sham that Pitsicalis and Hendirx have used simply to shield themselves from liability; (d) upon information and belief, Purple Haze Properties is undercapitalized as compared to the potential liabilities Pitsicalis and Hendrix have caused it to assume; (e) Pitsicalis and Hendrix have failed to observe LLC and other corporate formalities in operating Purple Haze Properties; (f) acting in bad faith, Pitsicalis and Hendrix have abused the separate LLC existence of Purple Haze Properties ; (g) the LLC and corporate veils separating Purple Haze Properties from Pitsicalis and Hendrix should be disregarded because Pitsicalis and Hendrix have used them to defeat justice, to perpetrate fraud, and/or to evade contractual or tort

responsibility; and, likewise (h) failure to pierce the LLC and corporate veils separating Pitsicalis and Hendrix from Purple Haze Properties would result in fraud, injustice or inequitable consequences.

184.   Pitsicalis and Hendrix have disregarded the corporate form of Purple Haze Properties for their own benefit and made it a mere instrumentality for the transaction of their own affairs.

185.   Pitsicalis and Hendrix's conduct has resulted in such unity of interest and ownership that the separate personality of Purple Haze Properties no longer exists.

186.   To observe the corporate form would promote injustice and protect the fraudulent conduct of Pitsicalis and Hendrix.

187.   The Court may pierce the LLC and corporate veil of Purple Haze Properties and hold liable Pitsicalis and Hendrix for the conduct of the LLC and corporation.

188.   Plaintiffs have suffered damages as a result of Pitsicalis and Hendrix's disregard of the LLC and corporate forms of Purple Haze Properties.

189.   Defendants Pitsicalis and Hendrix have exercised such dominion and control over Purple Haze Properties that Purple Haze Properties had no separate will of its own.

190.   Defendants Pitsicalis and Hendrix have used their dominion and control over Purple Haze Properties to conduct, inter alia, the actions complained of herein.

191.    Accordingly, Defendants Pitsicalis and Hendrix must be held jointly and severally liable with Defendants on any and all claims asserted herein.

**FOURTEENTH CLAIM**
**(Unjust Enrichment)**
**Against All Defendants**

192.    Plaintiffs reallege and incorporate paragraphs every allegation contained in the preceding paragraphs as though fully set forth herein.

193.    On information and belief, Defendants have wrongfully received money from third parties that they should not in equity and good conscience retain, on account of their federal and common law trademark infringements, false designations of origin, unfair competition, trademark dilution, and related acts.

194.    The benefit unjustly received by those Defendants implies a promise, or quasi-contract, to pay those benefits to Plaintiffs.

195.    Plaintiffs have demanded that Defendants stop their infringements and misappropriation of Plaintiffs' marks and business goodwill, and Defendants have refused.

196.    Plaintiffs seek restitution from Defendants consisting of all profits received by those Defendants on account of their violations of Plaintiffs' rights.

**FIFTEENTH CLAIM**
**(Constructive Trust)**
**Against All Defendants**

197.    Plaintiffs reallege and incorporate every allegation contained in the preceding paragraphs as though fully set forth herein.

198.    By virtue of their wrongful conduct, Defendants illegally received money and profits that rightfully belonged to Plaintiffs.

199.    Defendants are therefore involuntary trustees, holding the gross receipts from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Plaintiffs' trademark rights therein. Defendants hold such moneys and funds on behalf of and subject to a first and prior lien against all others and in favor of Plaintiff. On information and belief, Defendants hold this illegally received money and profits in the form of bank account, real property, and personal property that can be located and traced.

200.    Plaintiff is entitled to the remedy of a constructive trust in view of Defendants' wrongful infringement of Plaintiffs' trademark rights.

201.    Plaintiffs have no adequate remedy at law.  In addition to the equitable remedies sought herein.  Plaintiffs seek an accounting and constructive trust on all further monies received by Hendrix, Pitsicalis, and Defendants on account of their infringement and dilution of Plaintiffs' rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follow:

1.    On the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Twelfth Claims of this Complaint an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

a. That Defendants, their agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendant be enjoined and restrained permanently from:

    i. directly or indirectly infringing the Hendrix Marks in any manner, including, but not limited to distributing, advertising, selling, or offering for sale any goods or services (inclusive of the Infringing Product at issue in this suit) which are confusingly similar to the Hendrix Marks;

    ii. using any mark, trade name, logo or design that tends falsely to represent, or is likely to confuse, mislead, or deceive purchasers, customers, or members of the public, that goods and services offered by Defendants originate from Plaintiffs, or that said goods or services have been sponsored, approved, or licensed by or associated with Plaintiffs or are in some way connected or affiliated with Plaintiffs;

    iii. engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, members or customers, or other members of the public to believe that the actions of Defendants' is connected with Plaintiffs, is sponsored, approved, or licensed by Plaintiffs, or is in some way connected or affiliated with Plaintiffs;

iv.   otherwise competing unfairly with Plaintiffs in any manner; and

v.   diluting and infringing Plaintiffs' Marks and damaging

Plaintiffs' goodwill, reputation, and business.

b.   That Defendants be required to deliver for destruction to Plaintiffs'
counsel, at the New York address set forth in the signature block
below, all goods in its possession or under its control, including
Defendants' Infringing Product, and any promotional and advertising
material related thereto, and any other unauthorized items which
infringe the Hendrix Marks.

c.   That Defendants be required to account for and to pay to Plaintiff all of
Defendants' profits and all of Plaintiffs' damages resulting from
Defendants' foregoing infringing and unfair activities;

d.   That Plaintiffs recover from Defendants their costs of this action,
reasonable attorneys' fees, and prejudgment interest;

e.   That Plaintiffs recover from Defendants their actual and compensatory
damages resulting from Defendants' conduct in an amount to be
proved at trial;

f.   That Plaintiff recovers from Defendants treble and punitive damages;
and

g.   That Plaintiffs have judgment against Defendants for Plaintiffs'
reasonable costs and attorney's fees in accordance with 15 U.S.C. §
1117(a) and N.Y. Gen. Bus. Law § 360-m and other applicable laws.

2.     On the Fourteenth Claim of this Complaint for restitution against all Defendants consisting of all profits received on account of their violations of Plaintiffs' rights.

3.     On the Fifteenth Claim of this Complaint for the imposition of a constructive trust on all assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants, from their product sales and revenues to the extent attributable to the Infringing Products and therefore attributable to the infringement of Plaintiffs' Marks and rights therein;

     a.   entry of an order permanently enjoining Defendants from accessing, using, transferring, withdrawing or otherwise dealing with any assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants until such time as the Court orders otherwise;

     b.   an accounting of any and all assets ostensibly owned by the Defendants or in the possession, custody or control the Defendants, including any transactions, acquisitions or transfers by the Defendants since their formation; and

     c.   interest, costs of suit, and such other relief as the Court deems just and proper.

4.     On the Seventh, Eighth, and Ninth Claims of this Complaint, Plaintiffs have judgment against Defendants an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

a. That Defendants, their agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendant be enjoined and restrained permanently from infringing upon Plaintiffs' copyrights:

b. for Plaintiffs' actual damages plus Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement;

c. or, alternatively, for the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000.00 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c); and

d. an award of their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

5.      On the Tenth and Eleventh Claims, Plaintiffs have judgment against Defendants an award of monetary damages, including treble damages, punitive damages, attorneys' fees, costs, and expenses, such other and further relief as the Court may deem just and proper, and entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct its practices and to comply with anti-deceptive practice statutes nationwide.

6.      On the Thirteenth Claim of this Complaint for a finding that Defendant Purple Haze Properties is merely an alter ego of Defendants Pitsicalis and Hendrix and, as such, Defendants Pitsicalis and Hendrix are jointly and severally liable for the acts complained of hereinabove.

## JURY DEMAND

Plaintiffs request a trial by jury in this matter.


Dated:          New York, New York
                March 16, 2017


                                   **SHUKAT ARROW HAFER WEBER &**
                                   **HERBSMAN, LLP**


                                   By:     */s/ Dorothy M. Weber*
                                           Dorothy M. Weber (DW4734)
                                           dorothy@musiclaw.com
                                           494 Eighth Avenue, Suite 600
                                           New York, NY 10001
                                           T: 212-245-4580
                                           F: 212-956-6471
                                           *Attorneys for Plaintiffs*

*Of Counsel:*

**Wilson Smith Cochran Dickerson**
901 Fifth Ave., Suite 1700
Seattle, WA 98164
T: 206-623-4100
F: 206-623-9273

**Crain Law Group, LLC**
297 Prince Avenue, Suite 24
Athens, GA 30601
Tel. / Fax 706.548.0970