UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | |
|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington Limited Liability Company, and AUTHENTIC HENDRIX, LLC, a Washington Limited Liability Company,<br><br>                    Plaintiffs,<br><br>-against-<br><br>ANDREW PITSICALIS, an individual; LEON HENDRIX, an individual; PURPLE HAZE PROPERTIES, LLC, a Nevada Limited Liability Company; ROCKIN ARTWORK, LLC, a Nevada Limited Liability Company; CARMEN COTTONE a/k/a CARMEN THOMAS ANDOLINA a/k/a CARM COTTONE, an individual d/b/a PARTNERS AND PLAYERS, a New York Company and d/b/a DYNASTY GOURMET FOODS, a New York Company; C-LIFE GROUP, LTD., a New York Corporation; and BIC CORPORATION, a Connecticut corporation,<br><br>                    Defendants. | Case No.: 1:17-cv-1927<br><br>**MEMORANDUM OF LAW SUPPORTING MOTION TO DISMISS UNDER 12(b)3** |

-------------------------------------------------------x

        PLEASE TAKE NOTICE that Defendants ANDREW PITSICALIS, LEON HENDRIX, PURPLE HAZE PROPERTIES LLC, ROCK ARTWORK LLC, CARMEN COTTONE, and C-LIFE GROUP LTD, by and through undersigned counsel, have moved to dismiss Plaintiff's Complaint in the above-captioned matter before the Honorable Paul A. Engelmayer, United States District Judge, on a date and time to be

determined by the Court, at the United States Courthouse for the Southern District of New York, and present this memorandum of law in support thereof.

## I.  INTRODUCTION

Plaintiffs move the Court for a dismissal of the current action pursuant to Rule 12(b)3 for improper venue in lieu of answering the complaint. The applicable section of 28 USC 1391 (b) 2 requires that an action be brought in the Federal District where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Thus, for venue to be proper, *significant* events or omissions *material* to the Plaintiffs' claim must have occurred in the district in question, even if other material events occurred elsewhere. On the face of the complaint alone, neither of these requirements are met.

This case is part of an ongoing saga of litigation between Plaintiffs and Defendant Leon Hendrix and his companies and foundations that have delineated the rights of the parties vis-à-vis the famous musician Jimi Hendrix, Leon Hendrix's brother. The vast majority of these cases have been in Western Washington, Plaintiffs reside in Western Washington, and Leon Hendrix is domiciled in Western Washington. Plaintiffs' trademarks are registered to their business address in Western Washington. Other than the minimal activities alleged against defendant C-life that are also governed by a Western Washington United States District Court injunction, none of the other Defendants reside or actions occurred within the Southern District of New York. Therefore, the Southern District of New York is the improper venue for this action and Defendants are entitled to Dismissal of the action.

## II.     BACKGROUND LITIGATION

1. Defendant Leon Hendrix and his family, Jimi Hendrix's nieces and nephews, were cut out of participation with Jimi Hendrix's music catalog and other limited rights that descended to Defendants, first by his father in Al Hendrix's last will, and then following an unsuccessful contest to that will in 2003. In re Estate of James Allen Hendrix and In re the Matter of the Revocable Living Trust of James Allen Hendrix, King County Superior Court of Washington (Consolidated Case No. 02-4-02569-0 SEA).

2. However, that was not enough for Plaintiffs, and they brought a series of legal challenges to any Jimi Hendrix-related activity that Leon Hendrix chose to engage in, starting with a 2003 challenge to Leon's operation of the charitable James Marshall Hendrix Foundation ("Foundation Case"). See Experience Hendrix v. James Marshall Hendrix Foundation, No. 03-cv-03462, Document 47 (USDC Western District of Washington, 2005); Declaration of Counsel Thomas T. Osinski, Ex. 1.

3. In the Foundation Case, the Federal District Court found — and the 9th Circuit affirmed — that no right of publicity descended to Defendants when Jimi Hendrix died without a will in 1970, and, thus, they had no general right to stop Leon Hendrix and his associates from dealing in Jimi Hendrix's name, likeness, and image. See id. (Aff'd USCA No. 05-36029 9th Cir, 2007); Declaration of Counsel Thomas T. Osinski, Ex. 2.

4. In 2007, Defendants again sued Leon Hendrix's companies and associates over Electric Hendrix Vodka ("Vodka Case"). Although Electric Hendrix Vodka was eventually found to infringe some of Defendants' trademarks, the Federal District Court reaffirmed that Defendants had no blanket publicity right in Jimi Hendrix

and that the infringement arose from similarity to Defendants' specific Jimi Hendrix Marks, not the association with Jimi Hendrix alone. Thus, others could deal in Jimi Hendrix products if their logos were not too similar to Defendants'. In short, the Court found no exclusive right to Jimi Hendrix-based products for Experience Hendrix, LLC, and Authentic Hendrix, LLC. Experience Hendrix v. Electric Hendrix, 07-cv-00338, Document 104 (USDC Western District of Washington, 2008); Declaration of Counsel Thomas T. Osinski, Ex. 3.

   5.  In 2009, Defendants once again sued Leon Hendrix's companies and associates, including Plaintiff Andrew Pitsicalis, over production of general Jimi Hendrix merchandise and use of the names "Hendrix Licensing," "Hendrix Artwork," and an associated logo and authentic Jimi Hendrix signature ("Hendrix Artwork Case"). Experience Hendrix v HendrixLicensing.com, No. 09-cv-00285 (USDC Western District of Washington, 2009).

   6.  In the Hendrix Artwork Case, the Federal District Court did find the use of the business and domain names that included the name "Hendrix," the associated logo, and the authentic signature to be infringing and enjoined their use in 2009. This is the only infringement ever found against Andrew Pitsicalis or his companies, and any injunction against Mr. Pitsicalis or his companies has only addressed these specific infringements which discontinued in 2009. See id, Document 57; Declaration of Counsel Thomas T. Osinski, Ex. 4.

   7.  The Federal District Court also reaffirmed the right of Plaintiff Pitsicalis, and by extension Plaintiff Leon Hendrix, to deal in Jimi Hendrix products in the Hendrix Artwork Case. The Court also expressly found that Plaintiffs could use the names "Hendrix" and "Jimi Hendrix" when describing an image of Jimi Hendrix on one of their products, and that Jimi Hendrix song titles could be used for products as

well. These findings were not appealed by Defendants although other matters were. See id, Documents 27, 105; Declaration of Counsel Thomas T. Osinski, Exhibits 5 and 6.

       8.       Following appeal and remand, a settlement was reached. As part of that, a new permanent injunction was entered by the Federal District Court, but it was to comply with instructions from the Court of Appeals and did not reach any new or different behavior than what was enjoined, and had been enjoined, since 2009. See id, Document 188; Declaration of Counsel Thomas T. Osinski, Ex. 7.

       9.       In 2016, Defendants once again sued Leon Hendrix and his associates over Jimi Hendrix products in Federal District Court in Georgia ("Georgia Case"). In the Georgia Case, Defendants once again tried to preliminarily enjoin Leon Hendrix and his associates from producing and advertising Jimi Hendrix products (liquor again, in this instance) and failed to do so on all but one limited count, namely the use of the word "Jimi" online, and that was further limited to only the products at issue. Experience Hendrix v. Tiger Paw Distributors, No. 16-cv-00107, Documents 100, 108 (USDC Southern District of Georgia 2016); Declaration of Counsel Thomas T. Osinski, Exhibit 8 and 9.

      10.      The Georgia Case recently settled and, thus, even the limited prohibition on the use of the word "Jimi" to promote the products at issue in the suit only in online context was never made permanent due to any court ruling or finding, but rather a negotiated settlement that did not involve Leon Hendrix whom was dismissed from the case. See id, Document 191; Declaration of Counsel Thomas T. Osinski, Ex. 10.

### III.    ARGUMENT

Defendants move for dismissal of this action pursuant to Rule 12 (b) 3 for improper venue. The Complaint does not allege proper facts, activities, or omissions for venue to lie in the Southern District of New York, and no amendment of the complaint can cure that deficiency. The bulk of the activity alleged to violate Plaintiffs' rights occurred outside of the Southern District of New York, those rights have been defined time and again by courts outside of the Southern District of New York[1], and the property itself is situated outside of the Southern District of New York. 28 USC 1391 (b) provides:

> "**(b) VENUE IN GENERAL.**—A civil action may be brought in—
> **(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> **(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, section (1) is inapplicable, as several defendants are not residents of New York State. Section (3) is also inapplicable as there are other districts where actions may be brought, as illustrated by the extensive previous litigation. Therefore, only section (2) could apply to this action, but it, too, does not establish the Southern District of New York as the proper venue.

The statute requires that a *substantial* part of the events or omissions occur within the District the action is brought, or that a *substantial* part of the property that is

---

[1] In fact, all the relevant cases, save one, were brought in Seattle, Washington. The one that was not was brought in the Southern District of Georgia because the product at issue was distributed from there.

the subject of the action reside in the district. The Second Circuit has defined the meaning of substantial within the venue statute:

> "In doing so, however, we caution district courts to take seriously the adjective *substantial*. We are required to construe the venue statute strictly." See <u>Olberding v. Illinois Cent. R.R.</u>, 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953). That means for venue to be proper, *significant* events or omissions *material* to the Plaintiffs' claim must have occurred in the district in question, even if other material events occurred elsewhere. It would be an error, for instance, to treat the venue statute's "substantial part" test as mirroring the minimum contacts test employed in personal jurisdiction inquiries. See <u>Jenkins Brick</u>, 321 F.3d at 1372; <u>Cottman Transmission Sys. v. Martino</u>, 36 F.3d 291, 294 (3d Cir.1994); <u>cf. United States ex rel. Rudick v. Laird</u>, 412 F.2d 16, 20 (2d Cir.1969) ("The concepts of personal jurisdiction and venue are closely related but nonetheless distinct."); <u>Gulf Insurance Company v Glasbrenner</u>, 417 F3d. 353, 357 (2nd Cir 2005) (emphasis in original)

Here, there simply are no significant events material to the bulk of Plaintiffs' claims that occurred in the Southern District of New York, and Plaintiffs do not allege otherwise because they cannot. The vast majority of the allegedly infringing Jimi Hendrix products are not products offered or sold in the Southern District of New York. Many have not *even* reached market *anywhere* yet. Many more, such as those related to the emerging state-sanctioned legal cannabis markets cannot even be offered in the Southern District of New York as no such legal outlet exists. Contracts creating all of these products would have to have been, and were, created outside the Southern District. Only Defendant C-Life resides in the Southern District of New York. See <u>First Amended Complaint</u>, Paragraphs 15-23.

Moreover, the allegations against C-Life concern unauthorized use of a Jimi Hendrix signature, an issue controlled by the injunction in the Hendrix Artwork Case from the Western District, which is even referenced in the Complaint and cited above. But of the 67 pages of the most recent Complaint dedicated to Plaintiffs' allegations

against Defendants, only a few paragraphs speak to the activities of Defendant C-Life, the only Defendant (or even Party) located in the Southern District of New York. Other than the speculative possibility of a handful of lone products finding their way into the Southern District, such as newly added Defendant Bic Corporation's lighters, C-Life's minimal activities are the only "events or omissions" alleged in the Southern District of New York. Even Plaintiffs themselves only allege that "some" activity took place in the Southern District of New York. See First Amended Complaint, Paragraph 28.

The venue statute also allows for the action to be brought where a substantial part of the property at issue resides. That also cannot be the Southern District of New York as the "property" at issue is Plaintiff's Federal and Common Law trademarks, copyrights, and business reputation, and the limits and contours thereof as defined by the courts in previous litigation. The only place this property can be situated is where Plaintiffs' businesses are located in Tukwila, Washington, just outside of Seattle. This is further illustrated by the fact that the bulk of the litigation establishing the limits of those rights and the ability of Defendants to legally deal in Jimi Hendrix-based products occurred in the USDC for the Western District of Washington as cataloged above. Thus, the property at issue in this action is not situated in the Southern District of New York. Any claim to the contrary would make the plain language of the venue statute meaningless.

Once it has been determined that a matter was filed in the improper district, the Defendant can seek dismissal as opposed to transfer. See TradeComet.com v. Google, 647 F3d. 472, 475 (2nd Cir 2011) (analyzing a 12(b)3 improper venue motion based on a forum selection clause). Therefore, Defendants here also seek dismissal. No significant material events occurred in the Southern District of New York nor does the

property at issue reside in the Southern District of New York. Thus, venue is improper and dismissal is proper.

## IV.    CONCLUSION

Plaintiffs' complaint is overwhelmingly concerned with acts and omissions that occurred outside the Southern District of New York, and no substantial property at issue is situated in the Southern District of New York in violation of the venue statute. The controlling Second Circuit Law in Gulf Insurance interprets the venue statute as requiring that significant material events have to have occurred within the district the action is brought in, and this is distinct from and beyond the minimum contacts of personal jurisdiction. Plaintiffs do not, and cannot meet this standard as such significant material events have not occurred in the Southern District of New York. As such, the venue is improper under 28 USC 1391 and controlling precedent, and the action should be dismissed.

DATED this 12th day of May, 2017.

Respectfully submitted,

/s/ Thomas T. Osinski, Jr.
Thomas T. Osinski, Jr.
Osinski Law Offices, PLLC
535 Dock St., Suite 108
Tacoma WA  98402
253.383.4433 *Tel*
253.572.2223 *Fax*
tto@osinskilaw.com