SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
Dorothy M. Weber
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

EXPERIENCE HENDRIX, L.L.C., a
Washington Limited Liability Company, and          Case No.: 1:17-cv-1927 (PAE)
AUTHENTIC HENDRIX, LLC, a Washington Limited
Liability Company,

                        Plaintiffs,

     -against-

ANDREW PITSICALIS, an individual; LEON
HENDRIX, an individual; PURPLE HAZE
PROPERTIES, LLC, a Nevada Limited
Liability Company; ROCKIN ARTWORK,
LLC, a Nevada Limited Liability Company; CARMEN
COTTONE a/k/a CARMEN THOMAS ANDOLINA
a/k/a CARM COTTONE, an individual d/b/a
PARTNERS AND PLAYERS, a New York Company
and d/b/a DYNASTY GOURMET FOODS, a New York
Company; FIREFLY BRAND MANAGEMENT, LLC, a
California Limited Liability Company; FIREFLY
CONSUMER PRODUCTS, INC., a California
Corporation; CYNTHIA MODDERS, an individual;
GRASSROOTS CLOTHING, LLC d/b/a GRASSROOTS
CALIFORNIA, a Colorado Limited Liability Company;
KURT S. ADLER, INC., a New York Corporation;
FREEZE , a division of CENTRAL MILLS, INC.; and
GREEN CURES & BOTANICAL DISTRIBUTION,
INC.,

                        Defendants.

-----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RULE 37
SANCTIONS AND ADVERSE INFERENCE**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

    A.   Overview of Defendants' Non-Compliance ......................................................... 2

    B.   Failure to Provide Discovery Concerning Defendants' Own Licensees and Business Documents .......................................................................................................... 4

        a.   Defendants' Licensees Not Sufficiently Disclosed to Plaintiffs ................................. 4

            i.  Rock Roll n Soul: ..................................................................................... 4

            ii. Defendant Freeze: .................................................................................... 5

            iii. Humboldt AF Cannabis: ........................................................................ 5

            iv. Defendant GRCU: .................................................................................. 6

            v.  Defendant Kurt S. Adler: ....................................................................... 6

            vi. Consistent, Pervasive and Relentless Discovery Abuses: ..................... 6

        b.   Defendants' Other Outstanding Documents ................................................... 7

            i.  Bank and Financial Records: .................................................................. 7

            ii. Documents identified at Pitsicalis' 30(b)(6) ......................................... 8

            iii. Trade Show documentation: .................................................................. 8

    C.   Defendants' Misrepresentations, Mounting and Compounding Discovery Misconduct and Failures to Pay Sanctions ................................................................................. 8

        a.   September 19th and September 24th Orders – Defendants Owe $700 to Court Registry ....................................................................................................... 8

        b.   September 6th Order (pp. 2-3) – Defendants Owe $1,400 to Court Registry: ............. 9

        c.   September 6th  Order (p. 6): ......................................................................... 9

        d.   August 22nd Order (Dkt. 188): .................................................................. 10

D.    Mr. Pitsicalis's and Mr. Osinski's Overt Disdain For this Court's Orders and the Judicial Process ............................................................................................................... 10

E.    The Ongoing Misconduct of Mr. Pitsicalis And His Attorney And Business Partner, Mr. Osinski ..................................................................................................................... 11

F.    Defendants Deleted Files from their Electronic Devices In the Face of Court Orders ..... 13

ARGUMENT ........................................................................................................................... 13

POINT I PLAINTIFFS ARE ENTITLED TO TERMINATING SANCTIONS ......................... 13

A.    Defendants Have Willfully Been Non-Compliant ............................................................ 15

B.    Lesser Sanctions Have Been Ineffective .......................................................................... 16

C.    Defendants' Noncompliance Has Been Ongoing ............................................................. 16

D.    Defendants Were Warned That Their Continued Noncompliance May Lead to a Default Judgment ......................................................................................................................... 17

E.    Defendants' Conduct in Spoliating Evidence Further Warrants Terminating Sanctions . 18

POINT II PLAINTIFFS ARE ENTITLED TO ADVERSE INFERENCE .................................. 21

CONCLUSION ......................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009).................................................................................... 13, 14, 18

*Altschuler v. Samsonite Corp.*,
109 F.R.D. 353 (E.D.N.Y. 1986) .................................................................................... 21

*Arista Records LLC*,
633 F.Supp.2d 124, (S.D.N.Y. 2009)............................................................................. 14

*Braun ex rel. Advanced Battery Technologies, Inc. v. Zhiguo Fu*,
No. 11 Cv. 04383, 2015 WL 4389893 (S.D.N.Y. July 10, 2015)............................................ 19

*CAT3, LLC v. Black Lineage, Inc.*,
164 F.Supp.3d 488 (S.D.N.Y. 2016).............................................................................. 19

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979)................................................................................. 14, 16

*Daval Steel products v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991)................................................................................. 13, 17

*Fujitsu Ltd. v. Federal Express Corp.*,
247 F.3d 423 (2d Cir. 2001)........................................................................................ 18

*Grammar v. Sharinn & Lipshie, P.C.*,
No. 14 CIV. 6774 (JCF), 2016 WL 525478 (S.D.N.Y. Feb. 8, 2016) ...................................... 17

*Gurvey v. Cowan, Liebowitz & Lathman, P.C.*,
No. 06 Civ. 1202, 2014 WL 715612 (S.D.N.Y. Feb. 25, 2014) .............................................. 16

*Gutman v. Klein*,
2008 WL 4682208 (E.D.N.Y. Oct. 15, 2008).................................................................... 14

*Handwerker v. AT&T Corp.*,
211 F.R.D. 203 (S.D.N.Y. 2002) .................................................................................. 15

*In re Fosamax Products Liability Litig.*, No.,
06 MD 1789, 2013 WL 1176061 (S.D.N.Y. Mar. 21, 2013).................................................. 15

*Jones v. Niagara Frontier Transp. Auth.*,
836 F.2d 731 (2d Cir. 1987)........................................................................................ 14

*Martin v. City of New York*,
   No. 09 Civ. 2280, 2010 WL 1948597 (S.D.N.Y. May 11, 2010) (dismissing ........................ 17

*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel employees and Restaurant Employees Intern. Union*,
   212 F.R.D. 178 (S.D.N.Y. 2003) ................................................................................ 21

*Moody v. CSX Transportation, Inc.*,
   271 F.Supp.3d 410 (W.D.N.Y. 2017) ........................................................................ 19

*New England Telephone Co. v. Global NAPs, Inc.*,
   624 F.3d 123 (2d Cir. 2010)...................................................................................... 16

*Nieves v. City of New York*,
   208 F.R.D. 531 (S.D.N.Y. 2002) ............................................................................... 17

*Novick v. AXA Network, LLC*,
   No. 07 Cv. 07767, 2014 WL 5364100 (S.D.N.Y. Oct. 22, 2014) ............................................ 19

*Ottoson v. SMBC Leasing and Finance, Inc.*,
   268 F.Supp.3d 570 (S.D.N.Y. 2017)........................................................................... 19

*Penthouse Int'l, Ltd. v. Playboy Enters.*,
   663 F.2d 371 (2d Cir. 1981)...................................................................................... 21

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002)....................................................................................... 21

*Rockin Artwork LLC v. Bravado Int'l Grp. Merch. Servs., Inc.*,
   No. C15-1492-JCC, 2017 WL 6032876 (W.D. Wash. Feb. 23, 2017)..................................... 20

*Rockin Artwork, LLC v. Bravado Int'l Grp. Merch. Servs., Inc*,
   727 F. App'x 392 (9th Cir. 2018)............................................................................... 20

*SEC v. Razmilivic*,
   738 F.3d 14 (2d Cir. 2013)........................................................................................ 14

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007)...................................................................................... 16

*Shcherbakovskiy v. Seitz*,
   450 Fed. Appx. 87 (2d Cir. 2011)............................................................................... 16

*Silva v. Cofresi*,
   2014 WL 3809095 (S.D.N.Y. Aug. 1, 2014)................................................................. 13, 14

*Turner v. Hudson Transit Lines, Inc.*,
  142 F.R.D.  68 (S.D.N.Y. 1991) ...................................................................................... 21

*United States v. Int'l Bhd. of Teamsters*, *Chauffeurs, Warehousemen & Helpers of Am. AFL-CIO*, 948 F.2d 1338 (2d. Cir. 1991)........................................................................................ 19

*Urbont v. Sony Music Entm't*,
  No. 11 CIV. 4516 NRB, 2014 WL 6433347 (S.D.N.Y. Nov. 6, 2014).................................... 18

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) .......................................................................................... 18

**Rules**

Fed. R. Civ. P. 37(b) ................................................................................................................. 13

Fed. R. Civ. P. 37(b)(2)(A) ....................................................................................................... 13

Fed. R. Civ. P. 37(e)(2)......................................................................................................... 18, 19

Fed. R. Civ. P. 37(e)(2)(A)-(C)................................................................................................. 18

Federal Rule of Civil Procedure 37(e) ................................................................................. 18, 19

Rule 37 of the Fed. R. Civ. P ............................................................................................. passim

Plaintiffs Experience Hendrix, L.L.C., and Authentic Hendrix, LLC ("Plaintiffs" or "Hendrix"), by their attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP, submit this Memorandum of Law in support of their Motion for:

1. Additional sanctions against the Defendants and their attorney, Thomas Osinski, for violations of multiple Court Orders issued pursuant to Rule 37 of the Fed. R. Civ. P. and the Court's inherent authority, including heightened monetary sanctions, adverse inferences, admissions or terminating sanctions; and

2. Directing the Defendants and their attorney, Thomas Osinski, jointly and severally, to pay Plaintiffs' reasonable attorneys' fees in connection with this motion; and

3. Granting such other and further relief as the Court may deem appropriate.[1]

## PRELIMINARY STATEMENT

By now the Court is well aware of the consistent, pervasive and relentless discovery abuses by Defendants and their counsel, Thomas Osinski ("Mr. Osinski"). This Court has issued four (4) separate orders for monetary sanctions against Defendants. *See* Orders dated August 22, 2018 (the "August 22nd Order") Dkt. 188; September 6, 2018 (the "September 6th Order") Dkt. 194; September 19, 2018 (the "September 19th Order") Dkt. 213, and September 24, 2018 (the "September 24th Order") Dkt. 218. Pursuant to the September 19th Order, Defendants were to issue a check to Plaintiffs in the amount of $12,787.50 by September 21st. This amount reflected the reasonable costs and attorneys' fees expended by Plaintiffs in connection with Defendants' violations of the August 22nd Order. That date was extended to September 26, 2018 by the September 24th Order.

Instead of simply complying with these orders, on September 27, 2018, Mr. Osinski filed a Declaration (Dkt. 221) stating that Defendants were unable to pay the sanctions and understand and accept that the $100 per business day sanctions are now in effect and accruing.

---

[1]This motion is being filed concurrently with Plaintiffs' motion for preliminary injunction and order of attachment.

1

Consistent with the manner in which they have historically avoided paying previous judgments and sanctions, while Defendants state that they are "unable" to pay to sanctions, they continue to spend inordinate amounts of money on their lavish lifestyle, while happily accruing the additional $100 per business day for privilege of doing so.

Furthermore, the ongoing discovery misconduct – whether by misfeasance or malfeasance – has been condoned or aided by Mr. Osinski. He has abdicated not only the most basic discovery responsibilities to his client, but ignored the Court.

Because monetary sanctions have proven ineffective, more severe sanctions are necessary and appropriate at this time.[2] Furthermore, Plaintiffs are entitled to, at a minimum, adverse inferences in connection with these discovery violations and abuses.

## FACTUAL BACKGROUND

### A.    Overview of Defendants' Non-Compliance

Notwithstanding that this action is almost two (2) years old, Plaintiffs have yet to receive the requested documents and information concerning the actual scope of Defendants' Jimi Hendrix related licensing activity and royalties collected. Plaintiffs served their initial document demands on June 12, 2017.[3] Defendants have consistently provided documentation in wholesale "dumps" which contain documents which have not been Bates-stamped, categorized by category, or vetted for non-responsive materials. Plaintiffs have needlessly expended hundreds hours simply indexing these documents.

---

[2] This Court has already found that the Rule 37 sanctions are appropriate (See Dkt. 194, p.2), and Plaintiffs incorporate those findings and analysis herein by reference. The inquiry now is not whether they are appropriate, but what additional or heightened sanction to impose.

[3] Notwithstanding the addition of new defendants on April 23, 2018, the categories of documents sought in connection with the Pitsicalis Defendants' license agreements, approvals, prototypes, samples, etc., have always remained the same, and have always been sought in connection with each and every one of their licensees – including the ones which were ultimately named as defendants in this action.

Defendants' default response in every instance has been that they do not maintain business records; they do not maintain financial records; they do not pay state or federal taxes; they cannot track down their former accountant, who may or may not have some of this information; or they cannot – or will not – get documents from their own licensees. *See* Declaration of Andrew Pitsicalis filed January 17, 2018, Dkt. 83-3. The Court ordered that Andrew Pitsicalis submit to 30(b)(6) depositions on behalf of PHP and Rockin Artwork where he was ordered to be prepared to answer – definitively and completely – to these issues.[4] And yet, when Mr. Pitsicalis appeared for his deposition, he was totally and utterly unprepared to answer the very questions that the Court ordered that he answer (indeed, Mr. Pitsicalis testified he had not seen or even been provided the transcript from the Court Hearing on July 10th). *See* Pitsicalis Deposition Transcript dated August 2, 2018, attached as Exhibit B to the accompanying Declaration of Dorothy M. Weber ("Weber Decl.).

For the Court ordered deposition of Purple Haze Designs, Ms. Lemcke and her entourage disrupted the main reception area of Plaintiffs' local counsel, allowed their child to run in the hallway and press her face against the glass walls of the deposition room – all until ultimately ordered by the Court to leave. Over the course of a day and a half of depositions, Ms. Lemcke answered "I don't know" no less than 240 times to basic questions: Question: "Have you ever entered into a court order before?" Answer: "I don't know."; Question: "Do you know how money gets into your account?" Answer: "I don't know"; or Question: "What discussion did you have with Andrew Pitsicalis in or around December 2017 to ensure that both of you were complying

---

[4] They were also ordered to produce forensic images of their hard drives, which are now to be the subject of an evidentiary hearing on October 26, 2018.

with the court orders?" Answer: "I don't know".  *See* Lemcke Deposition Transcript dated September 18, 2018, Weber Decl. Exh. C.[5]

The deposition of William Pitsicalis, president of Defendant GRCU, fared little better with his flippant answers to simple questions like what his qualifications were to become of GRCU (answer: "I'm just the pretty face to this company") or why he chose his title as licensing director at Purple Haze Properties (answer: "How pimp is that") *See* William Pitsicalis Deposition Transcript dated September 20, 2018, pp. 44, 81, Weber Decl. Exh. D.  Ms. Lemcke and William Pitsicalis were equally unprepared to answer substantive questions.

The letters, motions, requests for leave and Orders concerning Defendants' failures to comply with Discovery comprise an inordinately large portion of the over 230 docket entries to date in this action.

### B.      Failure to Provide Discovery Concerning Defendants' Own Licensees and Business Documents

#### a.      Defendants' Licensees Not Sufficiently Disclosed to Plaintiffs

##### i.    Rock Roll n Soul:

As evidenced at the two-hour conference on July 10, 2018, Defendants have engaged in an ongoing game of whack-a-mole – most recently highlighted by Mr. Pitsicalis' declaration to the Court.  In his Declaration dated October 5, 2018 (Dkt. 226-1), Mr. Pitsicalis stated that a licensee "Rock N Roll Soul" [sic] was selling Jimi Hendrix products[6], yet this is a licensee for which only

---

[5] Defendants have now (of course, after multiple motions to compel Ms. Lemcke and PHD's depositions) admitted that it is Andrew Pitsicalis – and not Ms. Lemcke – who must be the 30(b)(6) witness for Purple Haze Designs. *See* Dkt. 226, Osinski letter to the Court dated October 5, 2018.

[6] On October 5, 2018, Mr. Pitsicalis cavalierly swore to the Court that C-Life has continued selling product – a clear misrepresentation since the Court entered an injunction on May 21, 2018.  (Dkts. 140 and 141). Mr. Pitsicalis went on to state that "Plaintiffs know this as they have in their possession of the quarterly reports" – another false statement since no royalty statement has been provided on Rock Roll N Soul (misnamed in his affidavit). Notwithstanding that Mr. Pitsicalis stated under oath that his licensee Rowdy

4

an agreement has been provided.  Discovery from Defendants provided an email with a few hangtag examples (none of which were on the product), but otherwise Defendants provided no written approvals, royalty statements, samples or prototypes.

In fact, an entirely new logo was being used on the unauthorized "Rock Roll n Soul" Jimi Hendrix products which was only uncovered after Plaintiffs' counsel went online after receiving the October 5th Declaration.  A review of the applicable website revealed an entirely new set of infringements, including a shirt which reproduced an entire verse of Plaintiffs' federally copyrighted lyrics from the Jimi Hendrix song "Power to Love".  Weber Decl. Exh. F.  Defendants' response: "this was not approved".  Weber Decl. Exh. G (October 11, 2018 Letter from Mr. Osinski). And to date, no documents.

### ii.  Defendant Freeze:

Production remains incomplete.  Freeze documents were first produced into a Dropbox on August 10th – at which time we alerted Mr. Osinski's office that a folder contained therein, labeled "RFP No. 41", was empty.  On October 10, 2018, Mr. Osinski represented that the responsive documents pertaining to Freeze has been placed in the Dropbox.  However, the same folder produced "RFP No. 41" still does not contain any documents.  While Defendants did provide additional documents in the form of packing slips and/or purchase orders, the documents end at March 2018 and, further, they are redacted with no accompanying log pertaining to the redaction.

### iii.  Humboldt AF Cannabis:

Defendants have produced no royalty statements and more importantly, no proof receipt of cash payments. William Pitsicalis as the "Licensing Director" of Purple Haze Properties testified

---

Sprout was continuing to sell Jimi Hendrix merchandise, their website says there are not Jimi Hendrix items available. Weber Decl. Exh. E.

5

that he picked up cash as in paper bags from licensees as royalty payments but did not verify the amounts in the "pick up". *See* William Pitsicalis Deposition Tr. p. 57, Weber Decl. Exh. D.

### iv. Defendant GRCU:

The parties also met and conferred on October 4th concerning the deficiencies in the GRCU production and the proper 30(b)(6) deposition witness. While Mr. Osinski represented that he would follow up by Tuesday, October 9th, Plaintiffs have still received none of the outstanding documents and information or confirmation of a deposition date.

### v. Defendant Kurt S. Adler:

The production by Mr. Osinski on August 10, 2018 contained five (5) total pages of documents that were identified as a "product line sheet."  No correspondence, no royalty statements, and no approvals were provided.  To the extent documents related to Defendant Adler were produced by Mr. Osinski in the "email dump", those were produced in late 2017, months before Adler was named as a defendant, and almost a year prior to when Mr. Osinski provided Adler's discovery responses.

### vi. Consistent, Pervasive and Relentless Discovery Abuses:

As the Court is aware from Plaintiffs' letters to the Court dating back to November 15, 2017 (Dkt. 72), as well as at the hearing on July 11, 2018 (Tr. pp. 5-6), Plaintiffs have been engaged in a needless game of "whack-a-mole" with respect to Defendants' licensing activities for over a year.  While Plaintiffs have been able to cobble together a list of relevant licensees identifiable from Defendants' document dump, as well as from Plaintiff's own investigative efforts, there is still no definitive "list" of Defendants' licensees.[7]  While the information concerning each and

---

[7] Mr. Osinski has been aware of the deficiencies relating to the scope of the Jimi Hendrix licenses since at least as far back as November 3, 2017, at which time he was placed on written notice of the same, and the parties met and conferred with respect thereto on November 21, 2017 for well over an hour.

6

every licensee has been part of Plaintiffs' document requests since the beginning of discovery –

and notwithstanding that Mr. Pitsicalis has testified under oath that he approves "every product"

*See* Weber Decl. Exh. B. (August 2, 2018 Deposition Tr. of Andrew Pitsicalis, p. 229)) – Plaintiffs

have not received copies of approvals for <u>most</u> of the products he has licensed.

In yet another recent example of "whack-a-mole," Plaintiffs, while searching the email

dump for documents related to PHP licensee Grizzly Griptape, just yesterday came across an email

wherein Mr. Pitsicalis wrote "great American rolling paper company they do our Hendrix line".

Defendants never identified a licensee named "Great American Rolling Paper."  Weber Decl. Exh.

H and I.

### b. **Defendants' Other Outstanding Documents**

### i. **Bank and Financial Records:**

Plaintiffs have been requesting specific additional financial documents since at least our

July 16, 2018 letter to Mr. Osinski, which has been referenced in letters to the Court (Dkts. 190;

224).  During the October 4, 2018 Meet and Confer, Mr. Osinski represented that we would be

receiving these documents by October 8, 2018 or October 12, 2018.  Mr. Osinski's October 8th

production, however, failed to include the following:

- Alpine Securities – not a single updated document.

- Wilson-Davis:
  - Only two documents were produced: a screenshot of the PHP account balance as of September 13, 2018 and the "trade/sale" attached to his October 5 Declaration. No other such documents as prior statements or updated correspondence, were produced.
  - No documents relating to Mr. Pitsicalis' individual account with Wilson-Davis. As Mr. Pitsicalis testified, he personally owns 7.5 million shares in GRCU, which are presumably held in an account with Wilson-Davis, as are the shares owned by PHP. A. Pitsicalis Deposition dated August 2, 2018, Tr. p. 108. Weber Decl. Exh. B.

- Civic Financial: No updated documents have been provided.

- Purple Haze Design's ("PHD") and Melissa Lemcke Wells Fargo Checking Account Statements:
  - The September 2017 PHD statement has finally been produced.  However, Mr. Osinski provided Ms. Lemcke's September 2018 statement but he did not produce PHD's September 2018 statement.

- Venmo
  - Some records have been produced, but records for the period between September 14, 2017 and July 2, 2018 remain outstanding.

### ii.   Documents identified at Pitsicalis' 30(b)(6)

As for production of prototypes/samples of physical products at issue in this litigation, Defendants agreed to take photographs of said products and produce them to Plaintiffs no later than October 12, 2018.  No such images have been produced.

### iii.   Trade Show documentation:

Mr. Osinski claims that this information will be contained in his new email production, but has not indicated when that will be.  As the Court is aware, this issue was raised at the conference on July 10, 2018.  PHP has provided no documents**.**

### C.   Defendants' Misrepresentations, Mounting and Compounding Discovery Misconduct and Failures to Pay Sanctions

### a.   September 19th and September 24th Orders – Defendants Owe $700 to Court Registry

On Monday, October 8, 2018 – and only <u>after</u> Plaintiffs sought leave to move for terminating sanctions and an asset freeze – did Defendants suddenly "find" the resources to pay the sanctions which were due a full week prior, we received, by UPS, a check in the amount of $13,870.50.[8]

---

[8] That check improperly included the additional sanctions of $700.00, for $100 per business day of non-compliance for the payment of the Plaintiffs' attorneys' fees and costs, which were supposed to have been paid directly to the Court's registry, pursuant to the September 24th Order (Dkt. 218). At Mr. Osinski's request the overage is being refunded and sent to him on Thursday, October 18, 2018 when the check

**b.** **September 6ᵗʰ Order (pp. 2-3) – Defendants Owe $1,400 to Court Registry:**

On Thursday, October 4, 2018 – and once again only after a motion was filed on October 2ⁿᵈ – Mr. Osinski finally provided the set of signed documents relating to the refinancing of the Upper Lake House, which were ordered to be produced no later than September 13, 2018.

On October 8, 2018, Plaintiffs addressed the issue directly with Defendants' counsel, Mr. Osinski, that pursuant to the clear terms of the September 6ᵗʰ Order, at pages 2-3, the Court very specifically ordered that the Defendants (and not third parties) produce these documents to the Plaintiffs:

> Defendants are directed to produce such records to plaintiffs by September 13, 2018, i.e., one week from today. For each business day thereafter that they fail to do so, defendants will incur $100 in sanctions payable to the Court registry. (September 6 Order, pp 2-3).

Plaintiffs advised Mr. Osinski that his failure to comply with these terms until October 4, 2018 has resulted in the accrual of $1,400.00 in sanctions payable to the Court registry.  Mr. Osinski responded the next day – in direct contradiction of the Order – simply that his clients were "under the impression" that a third party – MaCoy Capital – had sent the Plaintiffs those documents.  Defendants should be ordered to pay the sanctions.  The third party, however, had not sent those documents to Plaintiffs, notwithstanding Defendants and their counsel's independent obligation to produce them.

**c.** **September 6ᵗʰ  Order (p. 6):**

Despite Defendants' ongoing failure to either produce the categories of documents listed in the October 2ⁿᵈ letter already constitutes ongoing violations of the September 6ᵗʰ Order, Plaintiffs still made multiple requests to meet and confer in connection with these outstanding

---

clears our escrow account. To date, Mr. Osinski has not filed any confirmation that the $700.00 has been paid into the Court registry, notwithstanding that his declaration was due on September 27, 2018.

9

issues (including emails dated September 26th and October 2nd), in an effort to resolve them without the Court's continuing intervention and Orders. Unfortunately, while the parties met and conferred on October 4th, very little was accomplished and only partial issues were resolved. As set forth in Section B above, document production remains deficient within most of the categories of documents identified.

### d. August 22nd Order (Dkt. 188):

The August 22nd Order provided that if Defendants elected to extend Ms. Lemcke's deposition to two days (rather than one), they would have to pay Plaintiffs' counsel's "reasonable hotel costs for the intervening night." Notwithstanding that they did elect to continue the deposition for a second day, and were provided with a breakdown of the costs for one (1) room for the one (1) intervening night, Defendants have refused to pay Plaintiffs' counsel the reimbursement. In his October 5, 2018 letter (Dkt. 226), Mr. Osinski incorrectly states that Plaintiffs "dragged" out her deposition over two days, when in reality Plaintiffs, pursuant to Court Order and professional courtesy, accommodated Ms. Lemcke with frequent breaks, and then agreed to hold the second day of deposition near her house.[9]

### D. Mr. Pitsicalis's and Mr. Osinski's Overt Disdain For this Court's Orders and the Judicial Process

Notwithstanding Mr. Pitsicalis' obsequious declaration dated September 21, 2018 (Dkt. 215) wherein he avers that, "I do take the Court's order and instructions to me very seriously" and goes on to apologize for any "misunderstanding," Mr. Pitsicalis has done anything but take the Court orders seriously and there have been no misunderstandings.

---

[9] While Defendants' counsel did provide transportation and travel in connection with this accommodation, they have refused to pay for the hotel accommodation as ordered by the Court on August 22nd. Ms. Lemcke's full deposition transcripts and video recordings are available for the Court's review as are Andrew Pitsicalis' and William Pitsicalis' transcripts and video recordings.

Mr. Osinski's own comment to Mr. Pitsicalis in response to the Court's September 19, 2018 Order (Dkt. 213) reflects the truth of how Mr. Osinski and Mr. Pitsicalis view the Court's sanction order:  The subject line of Mr. Osinski's email to Mr. Pitsicalis: "Shit just got real bro...", notwithstanding there had been no less than five (5) *previous* orders for sanctions including orders to compel and monetary sanctions, all of which should have made it real enough.  Mr. Pitsicalis's unctuous September 21st Declaration to the Court is entirely belied by his actual thoughts upon receiving the order from Mr. Osinski: "F__ing BS actually got f___ed." *See* email dated September 19, 2018, Weber Decl. Exh. A.

## E. The Ongoing Misconduct of Mr. Pitsicalis And His Attorney And Business Partner, Mr. Osinski

Mr. Osinski was directed by the Court, in no uncertain terms, as far back as the July 10, 2018 hearing on discovery, as to what his role was as the attorney for these Defendants:

1. Mr. Osinski was responsible for ensuring that Mr. Pitsicalis was prepared for his 30(b)(6) deposition – that did not happen.

> THE COURT: … But he has to be informed and he has to be thoroughgoing. This is going to take some prep. **I want to make sure, notwithstanding your being on the other side of half of the country, that you can work with him. So that what we don't have is a situation of a 30(b)(6) witness who shows up and he is saying I don't know, and someone else knows that, and that is not an acceptable answer.** You don't object to the 30(b)(6) areas and therefore he simply has to be prepared to give a deep through going answer to those.

> MR. OSINSKI: Understood.

> *See* Hearing Tr. pp. 11-12 (emphasis added):

> THE COURT: He may be terrible at books, but he will have to be really good at truth telling and completeness when he is on the stand for 30(b)(6).

> MR. OSINSKI: I agree.

> . . .

11

THE COURT: Even if he is keeping records in a slovenly way, **when the time comes for discovery, and if he is basically incapable of assisting, counsel has to get there and get on your hands and knees and go through the shoeboxes**. But ultimately you have no choice but to systematically go through any repository, even if it is called a shoebox that he has, and be systematic about it. And if at the end of a thorough search results in drafts, so be it. But there is more than good reason to worry that he is just saying stuff, and that it is not actually the basis of the sort of thorough search that any lawyerly professional would credit.

MR. OSINSKI: Right.

Hearing Tr. pp. 21 – 22.

2.  Mr. Osinski was responsible for ensuring that his clients' computers were properly imaged and delivered to the Plaintiff that week – that did not happen.[10]

THE COURT: … But it strikes me, Mr. Osinski, that the clean and easy way to do this, since your client is not, it appears, uncommonly task oriented, it may be that the best way to do this is for you to simply get, **and I will ask you to do this, a forensic image of every computer in that office, and I want it over to the plaintiffs by Friday. And you just have to do it. And we have to get this case moving. Mr. Osinski, I want you to take ownership of this, and I want you to be in that office.** And needless to say, nothing needs to be moved out of there, but get a forensic professional to image the computer in that office and every electronic source in the office and get it to the plaintiff, okay?

Hearing Tr. pp. 25 – 26 (emphasis added).

THE COURT: And what you need, **this is on you to hire somebody and do it now**. And I assume you have hired forensic people with computers in the past?

MR. OSINSKI: Yes.

THE COURT: **And you need to do this now. And you hire a professional. And it is on you. And it is your dime to do this. But what I want you to do is have the hard drive recovered and imaged, and you very promptly to review it too. And the purpose here is not a relevance review. And at this stage of the game I am not having a lot of confidence in the relevance review process that has been done by Andrew Pitsicalis.**

Hearing Tr. p. 33 (emphasis added):

---

[10] In fact, Plaintiffs did not receive even arguably compliant images until September 13, 2018 (Dkt 232) – and only after after innumerable letters, applications and Orders of the Court – including sanctions.

12

**F.**     **Defendants Deleted Files from their Electronic Devices In the Face of Court Orders**

Plaintiffs' forensic expert reviewed the laptop images provided by Defendants and determined that all three (3) of those laptop hard drives produced by Defendants' forensic team contained "anti-forensic" programs. Andrew Pitsicalis's and Nick Schmitt's laptops used a program called "CleanMyMac" and William Pitsicalis's laptop used "Advanced Mac Cleaner" – and all were used to permanently delete files on each of the  devices prior to producing copies of such hard drives to Plaintiffs.  In fact, the "Clean My Mac" software had been installed on the two laptops and used to permanently delete files within the past five months (one in May 2018 and the other in July 2018) during the pendency of this litigation.  *See* Declaration of John T. Myers dated October 15, 2018. (Dkt. 232).

## ARGUMENT

## POINT I

## PLAINTIFFS ARE ENTITLED TO TERMINATING SANCTIONS

Fed. R. Civ. P. 37(b) provides, *inter alia*, that if a party "fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders."  Such orders may include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (noting that party's failure to comply with court-ordered discovery may result in terminating sanctions); *Daval Steel products v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ("When a party seeks to frustrate [discovery] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate"); *Silva v. Cofresi*, 2014 WL 3809095, at *2 (S.D.N.Y. Aug. 1, 2014).

13

Harsh sanctions, such as terminating sanctions, are reserved for extreme situations. *See Agiwal*, 555 F.3d at 302. However, "in this day of burgeoning, costly and protected litigation courts should not shrink from imposing harsh sanctions where they are clearly warranted." *Arista Records LLC*, 633 F.Supp.2d 124,139, (S.D.N.Y. 2009), *citing Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 735 (2d Cir. 1987); *see, e.g., Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068-69 (2d Cir. 1979) (dismissal is particularly appropriate when client, not counsel, is responsible for conduct leading to dismissal); *Gutman v. Klein*, 2008 WL 4682208, at *12 (E.D.N.Y. Oct. 15, 2008) (lesser sanctions are ill-suited to cases involving bad faith irretrievable spoliation of likely important documents when "it is impossible to know what plaintiffs would have found if defendants … had complied with their discovery sanctions," and especially when "the court has previously imposed lesser sanctions on the responsible party for other discovery misconduct").

The Second Circuit has delineated several factors which inform the propriety of terminating sanctions: (1) the willfulness of the non-compliant party or the reason for noncompliance; (ii) the efficacy of lesser sanctions; (iii) the duration of the period of noncompliance, and (iv) whether noncompliant party has been warned of the consequences of noncompliance. *Agiwal,* 555 F.3d at 302; *Silva*, 2014 WL 3809095, at *3. None of these factors is dispositive by itself. *SEC v. Razmilivic*, 738 F.3d 14, 25 (2d Cir. 2013) (noting that "these factors are not exclusive, and they need not each be resolved against the [sanctioned] party").

All of the factors for the granting of terminating sanctions are present in this action. Indeed, the Court has already found that Rule 37 sanctions are appropriate. Specifically, the Court noted in the September 6th Order that it "is increasingly concerned about the willfulness of defendants' recalcitrance, the limited efficacy to date of the imposition and prospect of lesser sanctions, and

14

the growing duration of defendants' noncompliance." Dkt. 194, p. 2. Thus, the inquiry now is not whether sanctions are appropriate, but what additional or heightened sanction to impose.

### A.  <u>Defendants Have Willfully Been Non-Compliant</u>

When evaluating willfulness, courts consider whether the order at issue is clear, whether the party to be sanctioned understood the order, and whether non-compliance is due to "factors beyond the party's control." *See In re Fosamax Products Liability Litig.*, No. 06 MD 1789, 2013 WL 1176061, at \*2 (S.D.N.Y. Mar. 21, 2013). "[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." *Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (internal quotations omitted).

Defendants' conduct has not only been willful, it has been relentless. The multiple Court Orders have provided clear deadlines and instructions. Defendants have understood the Orders, as they have not written to the Court asking for clarification; instead, they have only proffered excuses or apologies for non-compliance. *See, e.g.,* Dkt. 209, Letter from Mr. Osinski dated September 13, 2018; Dkt. 214, Letter from Mr. Osinski dated September 21, 2018.

They misrepresented that Mr. Pitsicalis does not conduct his business via text messaging. *See* Leon Hendrix Deposition Transcript, pp. 137, 171, 180, Weber Decl. Exh. J. They twice offered a sham doctor's note to further delay the deposition of Ms. Lemcke. See Dkt. 184, Letter from Ellen Crowe, MD, dated July 17, 2018; Dkt. 202-1, Letter from Ellen Crowe, MD, dated September 6, 2018. They even lied as to how many computers they had in the office. *See* Order dated May 31, 2018, Dkt. 139. These are just some of the myriad examples of their willful noncompliance.

Further, such non-compliance is not due to factors beyond Defendants' control: Defendants have not set forth any evidence that their failure to produce documents within their custody or

15

control—or within the custody of their agents—has been the result of someone else's malfeasance or negligence.

**B.    Lesser Sanctions Have Been Ineffective**

"[T]he severity of sanctions must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).  A "district court is not required to exhaust possible lesser sanctions before imposing dismissal or default is such a sanction is appropriate on the overall record."  *Shcherbakovskiy v. Seitz*, 450 Fed. Appx. 87, 88 (2d Cir. 2011).

Here, it is undisputed that lesser sanctions have been ineffective.  While the Court has issued multiple orders regarding discovery and sanctions awards, including $100 per business day sanctions,  it was not until the Court issued the $12,787.50 sanction for attorneys' fees that it "got real" for Mr. Pitsicalis and Mr. Osinski.  Weber Decl. Exh. A.  In other words, while the Court was becoming "increasingly concerned about…the limited efficacy to date of the imposition and prospect of lesser sanctions" (Dkt. 194, p. 2), Mr. Pitsicalis and Mr. Osinski were apparently not concerned until the September 19th Order directed them to pay $12,787.50.

**C.    Defendants' Noncompliance Has Been Ongoing**

When evaluating the duration of noncompliance, courts will not "encourage dilatory tactics, and compliance with discovery orders [that] would come only when the backs of counsel and litigants were against the wall."  *South New England Telephone Co. v. Global NAPs, Inc.*, 624 F.3d 123, 149 (2d Cir. 2010), quoting *Cine Forty-Second Street Threatre Corp.*. 602 F.2d at 1068.  Courts will find that a defendant's longstanding refusal to comply with discovery obligations weighs in favor of terminating sanctions.  *See*, *e.g.*, *Gurvey v. Cowan, Liebowitz & Lathman, P.C.*, No. 06 Civ. 1202, 2014 WL 715612, at *6 (S.D.N.Y. Feb. 25, 2014) (finding non-compliance that

16

"has lasted months and is still ongoing" weighed in favor of sanctions); *Martin v. City of New York*, No. 09 Civ. 2280, 2010 WL 1948597, at \*2, \*4 (S.D.N.Y. May 11, 2010) (dismissing action where interrogatory responses still outstanding one month after court-ordered deadline, and two and one-half months after initial deadline).

Plaintiffs first raised the issue of Defendants' discovery non-compliance to the Court almost a year ago in their November 15, 2017 (Dkt. 72). Since then, Plaintiffs have been forced to make numerous applications to the Court, and resulting in the multiple Court Orders described herein. It is only after Plaintiffs write to the Court, and the Court issues an Order, that Defendants respond and provide *some* discovery. This dilatory conduct has extended to depositions, as Defendants have shown up for depositions completely unprepared. Weber Decl. Exh. B, C and D.

As the Court noted in its September 6th Order, the duration of Defendants' noncompliance is "growing" and shows no sign of stopping. Dkt. 194, p. 2.

### D.   Defendants Were Warned That Their Continued Noncompliance May Lead to a Default Judgment

Finally, although parties have no "absolute entitlement to be warned that they disobeyed court orders at their peril," *Daval Steel*, 951 F.2d at 1366 (internal quotations marks omitted), providing such notice is customary. *Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002) (imposing sanction of dismissal only where party's "flagrant disregard for discovery orders" continued despite "repeated and explicit warnings"). "Courts are generally hesitant to impose terminating sanctions before warning the offending litigant." *Grammar v. Sharinn & Lipshie, P.C.*, No. 14 CIV. 6774 (JCF), 2016 WL 525478, at \*3 (S.D.N.Y. Feb. 8, 2016). Moreover, "[s]evere sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply." *Urbont v. Sony Music Entm't*, No. 11 CIV. 4516 NRB, 2014 WL 6433347, at \*3

17

(S.D.N.Y. Nov. 6, 2014); *accord Agiwal*, 555 F.3d at 303 (dismissal was appropriate where magistrate judge's discovery orders "warned of the possibility of sanctions, including dismissal").

Notwithstanding the multiple orders to compel and for monetary sanctions, the Court specifically and unequivocally warned Defendants of the possibility of terminating sanctions in the September 6th Order:

> "As to the fourth factor, by virtue of this order, defendants are now warned that continued noncompliance may lead to a default judgment."  Dkt. 194, p. 2.

### E.      Defendants' Conduct in Spoliating Evidence Further Warrants Terminating Sanctions

Federal Rule of Civil Procedure 37(e) specifically governs sanctions for spoliation of electronically stored information, or "ESI."[11]  The rule provides that, if the court finds that "the party acted with intent to deprive another party of the information's use in the litigation," the court may, *inter alia*, "presume that the lost information was unfavorable to the party; [ ] instruct the jury that it may or must presume the information was unfavorable to the party; or [ ] dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2)(A)-(C).

Here, Defendants clearly "acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).  It is unquestionable that material spoliation occurred long after the duty to preserve arose – but the actual dates the software was utilized on Defendants' laptops, when viewed in connection with the chronology of the discovery Orders herein, is even more alarming.  The program was installed on Mr. Pitsicalis's laptop on April 10, 2018, and last run on May 8, 2018 – shortly <u>after</u> the Court had ordered his hard drive

---

[11] The duty to preserve this the evidence contained on Defendants' computers–and any other computer or electronic device–arose, at the latest, when this action was filed on March 16, 2017.  The obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.  *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

produced (subject to agreed search terms); and the program was installed on Mr. Schmitt's laptop on June 20, 2018, and last run on July 18, 2018 – the same day the Court ordered its production by July 23, 2018. *See* Decl. of John Myers dated October 15, 2018, Dkt. 232, ¶¶ 19, 21. Thus, Defendants installed and ran anti-forensic software programs on their laptops – the laptops specifically identified as responsive and ordered to be produced by the Court's Orders – over a year after this action was filed, and it is clear that the anti-forensic programs were installed and run for the purpose and intent of entirely preventing Plaintiffs' access to the information stored thereon.

Defendants' conduct was – and has been – intentional. And, given the timing of the use of the "CleanMyMac" file deletion software – after this Court's Orders to produce them – as well as viewing these outlandish acts within the context of Defendants' multiple other violations, it is clear that the intention was to wipe digital information which was unfavorable and specifically for purposes of this litigation. *See Ottoson v. SMBC Leasing and Finance, Inc*., 268 F.Supp.3d 570 (S.D.N.Y. 2017) (courts may infer the requisite intent for sanctions pursuant to Fed. R. Civ. P. 37(e)(2)); *Moody v. CSX Transportation, Inc*., 271 F.Supp.3d 410 (W.D.N.Y. 2017) (same).[12]

Defendants' acts are not a simple failure to preserve. Rather, such behavior is calculated, intentional, contemptuous, and egregious conduct (by parties who have already been sanctioned twice) designed to destroy evidence, and prejudice Plaintiffs' discovery efforts – and at the same time is in direct violation of Orders of the Court, starting with one of the Court's initial Order dated

---

[12] Even if Rule 37(e) is inapplicable here, relief would nonetheless be warranted under the Court's inherent power. A "particularized showing of bad faith" is necessary to justify exercising that power. *United States v. Int'l Bhd. of Teamsters*, *Chauffeurs, Warehousemen & Helpers of Am. AFL-CIO*, 948 F.2d 1338, 1345 (2d. Cir. 1991); *accord Braun ex rel. Advanced Battery Technologies, Inc. v. Zhiguo Fu*, No. 11 Cv. 04383, 2015 WL 4389893, at *17 (S.D.N.Y. July 10, 2015); *Novick v. AXA Network, LLC*, No. 07 Cv. 07767, 2014 WL 5364100, at *5 (S.D.N.Y. Oct. 22, 2014). Spoliation designed to deprive an adversary of the use of evidence in litigation qualifies as bad faith conduct. *CAT3, LLC v. Black Lineage, Inc*., 164 F.Supp.3d 488, 501 (S.D.N.Y. 2016).

January 12, 2018. Dkt. 81.  The Court has issued multiple discovery orders in this matter to date since December 2017 – many of which have related directly to the Defendants' false statements and misrepresentations – made under oath – concerning the existence of electronic devices in their possession, custody and control.  Pure and simple, Defendants' act of destroying ESI evidence, especially in light of this Court's numerous orders on the topic, is making a mockery of this Court.

Furthermore, Defendants' conduct has been made possible by Mr. Osinski, who has not only consistently shirked his obligations under the Federal Rules and as instructed by the Court, but has continually failed to police his clients' egregious conduct.  Indeed, this pattern of behavior is not new.  Judge Coughenour of the Western District of Washington sanctioned Rockin Artwork, Mr. Osinski and Eric Krening (who appeared at the initial conference in the instant matter in June 2017) for discovery abuses pursuant to Rule 37.  *Rockin Artwork LLC v. Bravado Int'l Grp. Merch. Servs., Inc.*, No. C15-1492-JCC, 2017 WL 6032876, at *2 (W.D. Wash. Feb. 23, 2017), *motion for relief from judgment denied*, No. C15-1492-JCC, 2017 WL 2215804 (W.D. Wash. May 19, 2017).  A copy of the Order dated February 23, 2017 has been filed in this matter as Dkt. 208-2. The Ninth Circuit affirmed Judge Coughenour's discovery-related orders and awards of sanctions. *Rockin Artwork, LLC v. Bravado Int'l Grp. Merch. Servs., Inc*, 727 F. App'x 392, 394 (9th Cir. 2018).

Plaintiffs are mindful of the Court's direction that it is more likely to "grant an application…for heightened daily monetary sanctions on defendants (and potentially their counsel)." (Dkt. 231).  However, as set forth above, Plaintiffs respectfully submit that terminating sanctions are appropriate given the willfulness of Defendants' noncompliance, the efficacy of lesser sanctions, the extensive duration of noncompliance, and the multiple warnings from the Court to Defendants.

## POINT II

### PLAINTIFFS ARE ENTITLED TO ADVERSE INFERENCE

It is well established in the Second Circuit that "[i]n Rule 37 cases, intentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary measures." *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel employees and Restaurant Employees Intern. Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003), citing *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 387 (2d Cir. 1981); *Altschuler v. Samsonite Corp.*, 109 F.R.D. 353, 356 (E.D.N.Y. 1986). Moreover, the sanction of adverse inferences is available even for negligent behavior. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). "The *Residential Funding* court [] recalled earlier holdings that in determining whether evidence was made unavailable by a party with a culpable state of mind, the sanction of an adverse inference instruction was also available for negligence conduct." *Metropolian Opera Ass'n, Inc.*, 212 F.R.D. at 219; *see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991) ("[The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have detrimental rather than favorable should fall on the party responsible for its loss.").

Here, Plaintiffs seek the following adverse inference against Defendants: that Defendants have collected every penny from every license agreement they have signed or negotiated from 2014 to the present – whether or not Defendants have collected all or some of the money. The basis for this relief is that Defendants have withheld information on their licensees, and Defendants

21

receive payments in cash for which they do not maintain records.  Thus, Plaintiffs should be given the benefit of the doubt that Defendants have actually collected all which would have been due. This application is all the more reasonable given the spoliation concerns raised above and that are the subject of the evidentiary hearing scheduled for October 26, 2018.

In addition, Plaintiffs also seek to have their attorneys' fees and costs reimbursed for the unnecessary time they have spent, not only culling and vetting the Defendants' inappropriate document dumps in order to simply ascertain what documents are not there (work which clearly should have been done by the producing party), but the inordinate amount of time that Plaintiffs' counsel has spent in multiple discovery motions, preparing for, traveling to and conducting futile depositions of obstructionist, ill prepared witnesses who have had nothing but base disdain for the judicial process and this Court, all of which has been condoned by Mr. Osinski.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that the Court should grant Plaintiffs' motion in its entirety, award the Plaintiffs' attorney's fees and costs, and grant such other and further relief as the Court deems just and proper.

Dated: October 18, 2018
       New York, New York

**SHUKAT ARROW HAFER WEBER & HERBSMAN, LLP**

By:        */s/ Dorothy M. Weber*
           Dorothy M. Weber (DW 4734)
           494 Eighth Avenue, Sixth Floor
           New York, New York 10001
           (T):   (212) 245-4580
           (F):   (212) 956-6471
           (E):   dorothy@musiclaw.com
           *Attorneys for Plaintiffs Experience Hendrix*
           *L.L.C. and Authentic Hendrix, LLC*

22