UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXPERIENCE HENDRIX, LLC and AUTHENTIC HENDRIX, LLC,<br><br>    Plaintiffs,<br><br>    -v-<br><br>LEON HENDRIX, et al.,<br><br>    Defendants. | 17 Civ. 1927 (PAE) (GWG)<br><br>OPINION &<br>ORDER |

PAUL A. ENGELMAYER, District Judge:

This case was brought in March 2017 by the owners of copyrights and trademarks associated with the late singer and songwriter Jimi Hendrix, claiming acts of infringement by various corporate and individual defendants, including Hendrix's brother Leon Hendrix. Dkt. 1.  Plaintiff Experience Hendrix, LLC owns the musical compositions and sound recordings of Jimi Hendrix, and is the assignee, and exclusive owner, of the copyright and trademark rights previously owned by Jimi Hendrix.  *See* Dkt. 456 at 5.  Plaintiff Authentic Hendrix LLC is the licensing arm of Experience.  *Id.*  After contentious litigation, the Court issued a series of opinions, orders, and permanent injunctions with respect to plaintiffs' rights over these trademarks and copyrights, which bound, *inter alia*, defendants Leon Hendrix, Leon Hendrix's business partner Andrew Pitsicalis, and related corporate entities, Dkts. 366, 370.  On August 6, 2020, the Court closed this case.  Dkt. 466.

Plaintiffs now move for civil contempt against Leon Hendrix and two non-parties to the original Complaint:  Leon Hendrix's daughter Tina Hendrix and Hendrix Music Academy ("HMA").  Plaintiffs contend that they have violated the Court's permanent injunctions.

Dkt. 468 ("Pl. Mot."). For the following reasons, the Court finds all three in contempt, orders them to comply with the injunctions, and awards plaintiffs monetary relief for the violations the Court has found.

## I.   Background

The Court assumes familiarity with the background and procedural history of this case and summarizes here only the information necessary to explain the instant rulings.

### A.   The Underlying Litigation

In 2017, plaintiffs sued Leon Hendrix, Andrew Pitsicalis, and related corporate entities for, *inter alia*, trademark infringement, 15 U.S.C. § 1114; false designation of origin, 15 U.S.C. § 1125(a); trademark dilution, 15 U.S.C. § 1125(c); infringement of common law trademark rights; copyright infringement, 17 U.S.C. § 501; contributory infringement; vicarious infringement; deceptive acts, N.Y. Gen. Bus. Law § 349; false advertising, New York Gen. Bus. Law § 350; and unjust enrichment. Dkt. 115 (Third Amended Complaint, "TAC") ¶¶ 108–240.

On October 25, 2019, the Court entered a permanent injunction for plaintiffs against Pitsicalis's and Leon Hendrix's corporate entities. Dkt. 370. On December 9, 2019, the Court issued an order imposing terminating sanctions against Leon Hendrix for serial misconduct, including discovery abuses. Dkt. 398. On December 10, 2019, the Court entered a default judgment as to liability against Leon Hendrix, Dkt. 402, and a week later, against various other defendants. Dkt. 415. The Court referred the case to the Hon. Gabriel W. Gorenstein, United States Magistrate Judge, for a damages inquest. Dkts. 418, 432.

 On July 1, 2020, Judge Gorenstein found that plaintiffs were entitled to injunctive relief as well as damages from the defaulting defendants, including Leon Hendrix, for their trademark and copyright infringement. *See* Dkt. 456 ("Report") at 5, 28. Judge Gorenstein detailed the

range of violations of the plaintiffs' intellectual property rights that had been established, and which collectively demonstrated a brazen disregard of those rights.  Judge Gorenstein noted that Leon Hendrix and Andrew Pitsicalis had worked together to create "the illusion of an empire of 'authentic' Jimi Hendrix goods which include[d] cannabis, edibles, food, wine, alcohol, 'medicines,' and electronic products" that infringed on plaintiffs' trademarks and copyrights.  *Id.* at 13.  Among other acts of blatant infringement, Judge Gorenstein noted that the defendants had registered multiple domain names that infringed on plaintiffs' federally registered and incontestable trademarks; these included "jimifoods.com," "jimiwines.com," and "jimiteas.com." *Id.* at 9–10.  "Pepper Palace," a licensee of Leon Hendrix, willfully infringed on plaintiffs' copyrighted "Axis: Bold as Love" album artwork by placing it on boxes for sale of "Jimi Hendrix Hot Sauce Gift Pack."  *Id.* at 18.  Another corporate entity associated with Leon Hendrix "developed, marketed, and sold a line of cannabis-infused skin care products and beverages that infringed upon the Hendrix Marks."  *Id.* at 10 (quotations omitted).  From just one licensing agreement with Tiger Paw Distributers LLC, Leon Hendrix received around $30,000 for infringing Hendrix-branded alcoholic beverages.  *Id.* at 13.

On July 24, 2020, this Court adopted Judge Gorenstein's recommendations in their entirety, including awarding a judgment of $402,018.53 against Leon Hendrix.  Dkt. 458.  The same day, this Court issued a permanent injunction in favor of Experience Hendrix, LLC and Authentic Hendrix, LLC, and against "Leon Hendrix, his corporate entities, . . . partners, . . . affiliates, and those who receive actual notice or knowledge of th[e] injunction," protecting their copyrights and trademarks against infringement.  Dkt. 461 ("Leon Hendrix Permanent Injunction" or "Leon Hendrix Perm. Injun.") at 2.

### B.       This Motion

On October 19, 2020, plaintiffs filed a motion for civil contempt, Pl. Mot., and a memorandum of law in support, Dkt. 469 ("Pl. Mem.").  Plaintiffs there argue that Leon Hendrix, Tina Hendrix, and HMA violated the Court's permanent injunctions, over which the Court has retained jurisdiction for the purposes of enforcement.  *See* Leon Hendrix Perm. Injun. ¶ 7.  On October 20, 2020, the Court ordered plaintiffs to serve Leon Hendrix, Tina Hendrix, and HMA with the contempt motion, and to file proof of such service.  Dkt. 471.  Plaintiffs filed affidavits of service, *see* Dkts. 472–79, but, on November 12, 2020, the Court found those affidavits unpersuasive to establish legally effective service.  The Court directed plaintiffs either to attempt proper service again or to explain why the service already made was legally effective. Dkt. 480.  On November 20, 2020, plaintiffs filed such a letter, which in the alternative sought leave to serve Tina Hendrix and HMA by email.  Dkt. 482.

On November 23, 2020, the Court found that Leon Hendrix had been properly served with the contempt motion, and authorized plaintiffs to serve Tina Hendrix and HMA by email. Dkt. 483 ("Order of Service").  Plaintiffs then effected service via email on Tina Hendrix and HMA.  Dkts. 484–85.  On December 7, 2020, Tina Hendrix, on behalf of herself and HMA, filed an answer, *pro se*, to the motion.  Dkt. 490 ("Answer").  Leon Hendrix has not appeared in response to the motion.  On December 14, 2020, plaintiffs filed a reply to Tina Hendrix's answer.  Dkt. 491 ("Pl. Reply").

## II.   Discussion

Federal courts have inherent authority to enforce compliance with their orders and to punish for contempt any person who violates its orders.  *See* 18 U.S.C. § 401(3).  "Civil contempt sanctions may serve either or both of two purposes:  They may be coercive, to secure

compliance with court orders, or they may be compensatory, to make whole the party who has been wronged." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020); *see also EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1183 (2d Cir. 1985) (contempt sanctions serve "to coerce future compliance and to remedy past noncompliance"). Civil contempt differs from criminal contempt in that criminal sanctions are punitive in nature, while civil sanctions are not. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) ("Criminal contempt is typically imposed to punish the violation and vindicate the court's authority." (quotations omitted)).

The compensatory goal of civil contempt sanctions is "met by awarding to the plaintiff any proven damages." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *see also id.* at 720 ("It is error to withhold damages that are supported by the record."). That is because the purpose of compensatory sanctions is "to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Medina v. Buther*, No. 15 Civ. 1955 (LAP), 2019 WL 581270, at *26 (S.D.N.Y. Feb. 13, 2019) (quotations omitted).

In considering plaintiffs' claims of contempt-worthy conduct here, the Court has reviewed the entire record of this case, which discloses a regrettable history of Leon Hendrix's noncompliance with discovery and other orders. In addition, because Leon Hendrix has not filed an opposition or otherwise appeared, he is in default as to the instant motion. HMA is also in default because, although Tina Hendrix, appearing *pro se*, has filed an answer purportedly on behalf of HMA, Tina Hendrix, as a non-lawyer, cannot represent a corporation, and no counsel has entered a notice of appearance on behalf of HMA. *See Lattanzio v. COMTA*, 481 F.3d 137, 139

(2d Cir. 2007) ("[A] layperson may not represent a separate legal entity such as a corporation.");
*Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10 Civ. 1136 (NSR), 2017 WL
4386376, at *2 (S.D.N.Y. Oct. 2, 2017), *aff'd sub nom. Waterkeeper All., Inc. v. Salt*, 829 F.
App'x 541 (2d Cir. 2020) (summary order) (same in the context of a civil contempt motion).
The Court nonetheless has considered, on the merits, the sanctions application sought against the
two defaulting parties, as well as against Tina Hendrix, who is not in default.

Because HMA and Tina Hendrix were not parties to the original lawsuit, the Court's
analysis begins by determining whether the Leon Hendrix Permanent Injunction applies to them.
The Court then evaluates whether a contempt sanction is merited for each of Leon Hendrix,
HMA, and Tina Hendrix, and then considers the appropriate remedy.

### A. Nonparties

An order or injunction may bind a party's "officers, agents, servants, employees, and
attorneys; and . . . other persons who are in active concert or participation with [them]" who
receive "actual notice of [the order]." Fed R. Civ. P. 65(d)(2). "[C]onsequently, such non-
parties may, under certain circumstances, also be found in contempt for violating such an order."
*In re Soundview Elite, Ltd.*, No. 15 Civ. 5666 (KPF), 2016 WL 1178778, at *8 (S.D.N.Y. Mar. 23,
2016). On this basis, although none of the permanent injunctions that the Court has issued thus
far in this case identified either HMA or Tina Hendrix by name, both are so bound.

The Leon Hendrix Permanent Injunction in favor of Experience Hendrix, LLC and
Authentic Hendrix, LLC broadly provided that it was entered against "Defendant Leon Hendrix,
his corporate entities, successors, assignees, designees, officers, directors, employees, agents,
partners, representatives, affiliates, and those who receive actual notice or knowledge of this
injunction by personal service or otherwise." Leon Hendrix Perm. Injun. at 2. As for HMA, it is

registered in Washington State as a nonprofit corporation for which Leon (along with Tina) Hendrix serves as a Governor.  Tina Hendrix is both an HMA Governor and its registered agent. Pl. Mem. at 9; Dkt. 470 ("Weber Decl."), Ex. L.  Washington State law defines a "Governor" as a "director of a nonprofit corporation" or "[a]ny other person under whose authority the powers of an entity are exercised and under whose direction the activities and affairs of the entity are managed pursuant to the organic law and organic rules of the entity."  Wash. Rev. Code Ann. § 23.95.105(12).  Tina Hendrix, with Leon Hendrix, also co-sponsored an event which plaintiffs claim breached the Leon Hendrix Permanent Injunction, giving rise to the present contempt motion.  *See supra* p. 11; Pl. Reply at 2.

As a result of these affiliations with Leon Hendrix, HMA and Tina Hendrix are covered by multiple provisions of the permanent injunction.  HMA is, at a minimum, both a "corporate entity" and an "affiliate" of Leon Hendrix; and Tina Hendrix is, at a minimum, a "director," "officer" and "agent" of HMA, and an "affiliate" of Leon Hendrix's.  *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018) ("[A]ctive concert" has been found "where an enjoined party is substantially intertwined with a non-party.").

Both Tina Hendrix and HMA also received actual notice of the Injunction, as required by Federal Rule of Civil Procedure 65(d)(2).  *See* Order of Service at 2.  On August 25, 2020, plaintiffs sent a cease and desist letter to Tina Hendrix at her email address, tinahendrix1@yahoo.com ("Yahoo email address"), and to her listed address in Washington State, which is also the listed address of HMA.  Weber Decl., Ex. O; Pl. Reply at 8.  The Court later granted plaintiffs leave to effectuate alternative service via that same Yahoo email address after finding that "it is substantially reasonable to assume that emails sent to that address will reach" Tina Hendrix and HMA.  Order of Service at 4; *see also Great Am. Ins. Co. v. JMR*

*Constr. Corp.*, No. 15 Civ. 2226 (JCM), 2016 WL 3951409, at *2 (D. Nev. July 21, 2016) (finding that defendants received "actual notice via email").

Accordingly, the Court finds that Tina Hendrix and HMA had actual notice of the injunction at least since the beginning of September 2020.

To be sure, Tina Hendrix claims that she did not receive plaintiffs' cease and desist letter until she "was served with this lawsuit at the end of November, 2020." Answer ¶ 6. The Court does not find that contention credible. In seeking leave to effect service by email, plaintiffs had supplied the Court with convincing evidence that Tina Hendrix was using the email address at issue. *See* Dkt. 482 at 8. And Tina Hendrix's conduct confirms her active use of that email, including in connection with plaintiffs' communications. For example, on November 11, 2020, plaintiffs sent the Court courtesy copies of the papers related to their motion via email, which included a copy of the cease and desist letter, and copied Tina Hendrix at her Yahoo email address. A few hours later, Tina Hendrix emailed the Court in reply to that email. Her response demonstrated that she had received a copy of the cease and desist letter well before she "was served with this lawsuit at the end of November, 2020."[1]

---

[1] There is also strong circumstantial evidence of Tina Hendrix's (and HMA's) receipt of service. As of October 19, 2020, when plaintiffs filed their contempt motion, HMA's corporate status was delinquent. Pl. Reply at 4. But, on October 20, 2020, Tina Hendrix filed an updated status for HMA with the Washington Secretary of State, the same day that plaintiffs served Leon Hendrix with their contempt motion and first attempted service of that motion on Tina Hendrix and HMA. *Id.*; Dkt. 481, Ex. 6. Later, on November 18, 2020, Tina Hendrix issued a press release about plaintiffs' contempt motion. Pl. Reply, Ex. G. And, on November 23, 2020, a few hours before the Court issued its Order of Service, and thus before the point when Tina Hendrix claims that she and HMA first received actual notice of plaintiffs' filings, a page was added to the HMA website entitled "Lawsuit Against Us," which discussed plaintiffs' contempt motion. *Id.*, Exs. H, I.

### B.      Civil Contempt

A court may hold a party in civil contempt for failure to comply with an order if "(1) the

order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance

is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable

manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).  For contempt

sanctions to be imposed, "[i]t need not be established that the violation was willful."

*Paramedics Electromedicina Comercial*, 369 F.3d at 655.  Plaintiffs here argue, persuasively,

that Leon Hendrix, Tina Hendrix, and HMA's conduct meets these standards.

### 1.      Clear and Unambiguous Injunction

Relevant here, the injunction instated against Leon Hendrix and affiliates forbids the use

of "the name 'Jimi Hendrix,' the name 'Jimi,' the name 'Hendrix,' in any configuration . . . ; any

Hendrix registered or pending trademarks . . . ; or any image, likeness or signature of Jimi

Hendrix . . . in any manner, including but not limited to the sale, naming, identifying, offering for

sale, marketing, labeling, packaging, promotion, distribution or advertising of any product or

service, or in connection with any goods and services."  Leon Hendrix Perm. Injun. ¶ 1.  It

enjoins the use of "the trademarked Jimi Hendrix signature."  *Id.* ¶ 2.  It prohibits assistance in

"the preparation of any interviews, books, articles, television or motion picture productions or

other creation . . . concerning or relating to Jimi Hendrix . . . or causing any third party to engage

in any other activities constituting trademark infringement."  *Id.* ¶¶ 3, 4.  And it enjoins holding

oneself "out in any manner whatsoever as being licensed by, associated with, or in any manner

affiliated with Hendrix or Jimi Hendrix, directly or indirectly."  *Id.* at ¶¶ 6, 7(f).

These commands are "sufficiently clear and unambiguous" because they "leave[] no

doubt in the minds of those to whom [the injunction] was addressed . . . precisely what acts are

forbidden.'" *CBS Broad. Inc.*, 814 F.3d at 98 (quotations omitted).  The Court therefore finds the first contempt element met.

### 2.      Proof of Noncompliance

Plaintiffs point to four areas of noncompliance with the Leon Hendrix Permanent Injunction.  As to each, the Court finds that the "proof of noncompliance is clear and convincing."  *Id.*; *see Medina*, 2019 WL 581270, at *25 (this standard, in civil contempt context, requires "proof adequate to demonstrate a reasonable certainty that a violation occurred" (quotations omitted)).

### i.      *Interview to Promote Sale at Auction House*

Plaintiffs have adduced evidence that Leon Hendrix gave an interview for the purpose of advertising and promoting the sale of a purported Jimi Hendrix guitar.  Specifically, in July 2020, Leon Hendrix engaged an auction house to "hawk" "the authenticity of a purported Jimi Hendrix guitar by providing an interview discussing Jimi Hendrix," and got "paid to sign the guitar provenance."  Pl. Mem. at 1; Weber Decl., Ex. H.  Plaintiffs provided the Court with the link to a YouTube video of the interview as well as a transcript of the interview, which clearly demonstrate that the interview's purpose was to promote the sale of the guitar, from which Leon Hendrix would personally profit.  Weber Decl..; *id.* at 4 ("[W]e're here today because we have a guitar that we were hired to sell by one of our clients and I knew that there had to be a backstory to this guitar.  We wanted to be able to tell you guys a little bit more about the guitar, where it came from, in the words of . . .  his brother . . . ."); *id* ("I so graciously used my sales skills to talk Mr. Hendrix into spending an afternoon with" "[t]he winning bidder of this guitar. . . . So that is a special cherry on top.").

The Injunction, however, bars Leon Hendrix from giving interviews about Jimi Hendrix

10

aimed at promoting the sale of goods.  *See* Leon Hendrix Perm. Injun. ¶ 1 (enjoining "use of the name 'Jimi Hendrix,' the name 'Jimi,' the name 'Hendrix,' in any configuration . . . [including in the] promotion, distribution or advertising of any product"); *id.* ¶ 3 (enjoining preparation or assistance "of any interviews . . . whatsoever directly, or indirectly by implication, concerning or relating to Jimi Hendrix").  Indeed, once the auction house was notified of the Court's injunctions and the restrictions on Hendrix in this regard, on July 28, 2020, the auction house voluntarily removed the offending interview from its website.  Pl. Mem. at 8.  And, although it had previously apparently intended to do so, the auction house neither issued a certificate of authenticity signed by Leon Hendrix nor provided the winner with access to Hendrix.  *Id.*  The Court accordingly finds that Leon Hendrix's July 2020 interview in support of the auction was a clear violation of the injunction.

ii.    *Participation in Jimi Hendrix March to Sell Memorabilia*

Leon Hendrix, Tina Hendrix, and HMA together hosted and sponsored a "Jimi Hendrix 50th Anniversary Memorial Peace & Love March for Equity" ("the March") in September 2020.  Pl. Mem. at 9.  The event was advertised as including "two stages of live music" and the sale of "Jimi Hendrix memorabilia," among other activities.  In its online promotional materials for the event, HMA stated "ALL PROCEEDS BENEFIT THE JIMI HENDRIX MUSIC ACADEMY, A NOT-FOR PROFIT 501C3 CHARITY."  Weber Decl., Ex. P.  Plaintiffs provided the Court with screenshots of the advertisements for the event on Facebook posted by Tina Hendrix, as well as from HMA's website, a press release for the event featuring Jimi Hendrix's name and photograph, and multiple press reports about the event.  *Id.*; *id.*, Exs. M, Q, R.  As demonstrated by pictures from the event, the banner and backdrop for the event also featured an image of Jimi Hendrix, included a Jimi Hendrix quote, and reproduced a Jimi Hendrix signature.  *Id.*, Ex. S; Pl.

Mem. at 11.  The event, using as it did Jimi Hendrix's name and likeness to sell Jimi Hendrix memorabilia, thus squarely violated the permanent injunction.  *See* Leon Hendrix Perm. Injun. ¶ 1 (prohibiting use of any image, likeness or signature of "Jimi Hendrix," or the name "Jimi Hendrix," in connection with any goods or services); *id.* ¶ 2 (prohibiting use of "the name and words and marks 'Jimi,' 'Hendrix' and/or 'Jimi Hendrix,' including but not limited to the trademarked Jimi Hendrix signature or any script signature of any kind or nature").

In response, Tina Hendrix does not deny the event's existence or that she and HMA used Jimi Hendrix's name and likeness to promote sales of Jimi Hendrix–denominated merchandise. She instead characterizes the event as not driven by commercial gain, in that HMA holds itself out as a not-for-profit entity.  *See* Answer ¶ 2.  But HMA's non-profit status does not free it from its duty to comply with the permanent injunction, which does not contain an exception for not-for-profit affiliates of Leon Hendrix, and which squarely bars HMA, as a covered entity, from using, for the purpose of selling goods, the Jimi Hendrix name and likeness.  Plaintiffs (not HMA) hold the Lanham Act rights to that name and likeness.  And acts of infringement on trademarks rights committed by non-profit organizations fall within the reach of the Lanham Act. *See, e.g.*, *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 90 (2d Cir. 1997) (defendant's actions, even if "not undertaken for profit," "unquestionably render a service" for purposes of Lanham Act infringement); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629 (KMW), 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997) ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement."), *aff'd*, 152 F.3d 920 (2d Cir. 1998).

This event, too, breached the injunction, as it used plaintiffs' intellectual property relating to Jimi Hendrix—including the Jimi Hendrix name, signature, and image—to sell goods.

iii.        *Use of Jimi Hendrix T-Shirt to Secure Charitable Donations*

Both at the event and online on the HMA website, HMA sold a Jimi Hendrix t-shirt featuring an image of Jimi Hendrix on the front and a Jimi Hendrix quote followed by a protected Jimi Hendrix signature on the back.  Pl Mem. at 12.  Plaintiffs have provided the Court with screenshots of this t-shirt from HMA's Facebook page, as well pictures of Tina Hendrix wearing the t-shirt at the March.  Weber Decl., Ex. V.  The permanent injunction clearly bars such a sale.  *See* Leon Hendrix Perm. Injun. ¶ 1 (prohibiting use of any image, likeness, or signature of "Jimi Hendrix" in connection with any goods or services); *see id.* ¶ 2 (prohibiting use of "the trademarked Jimi Hendrix signature or any script signature of any kind or nature").

In response, Tina Hendrix partly admits this activity, in that she acknowledges that HMA distributed t-shirts with a Jimi Hendrix image, signature, and quote at the March.  But she depicts HMA's distribution of such materials as an inducement to donate to its charitable fundraiser, explaining that "shirts were given to people who . . . donat[ed] to the Hendrix Music Academy," and that such activity "differs from simply 'selling' a t-shirt."  Answer ¶ 2.  But, as set out above, the Permanent Injunction squarely forbids HMA, Leon Hendrix, and Tina Hendrix from using Jimi Hendrix trademarks in connection with the distribution of any product, which encompasses the t-shirt.  Tina Hendrix does not explain why HMA's distribution of the Jimi Hendrix t-shirt as an inducement to donate to HMA falls outside the scope or purpose of the injunction.

The Court therefore finds that the distribution of t-shirts bearing the Jimi Hendrix name, signature, image, and quote was in clear violation of the injunction.[2]

### iv. Solicitation of Funds and Advertisements Using Hendrix Name

Finally, plaintiffs have adduced evidence, in particular through screenshots of the various websites, that HMA is soliciting donations and promoting its services using the Jimi Hendrix name, while claiming to be a 501(c)(3) entity, although it is not registered as such with the IRS. Pl. Mem. at 13 n.4; Pl. Reply at 4; Weber. Decl., Exs. P, Z.[3]  For example, the defendants used the name "Jimi Hendrix 50th Memorial" for a Facebook page, as demonstrated by screenshots of the same, made fundraising efforts using the Jimi Hendrix name, and registered business domain names incorporating the word "Jimi," such as jimihendrixmememorialconcert.com.  Pl. Mem. at 14.

Tina Hendrix defends this conduct on the ground that HMA has been in operation since 2009 and has been registered with the Washington State Department of Licensing for 10 years.

---

[2] Tina Hendrix also states that the image of Jimi Hendrix featured on the banner and t-shirts was created by Leon Hendrix, who gave her permission to use it for charitable purposes in connection with HMA.  Answer ¶ 11.  Plaintiffs represent otherwise—that the image is derivative of a photograph by Donald Silverstein.  *See* Leon Hendrix Perm. Injun. ¶¶ 1, 7.  Tina Hendrix has not demonstrated that the image in question is distinct from, and not derivative of, the Silverstein photograph.  Regardless, the use of Jimi Hendrix's image, quote, and protected signature on the t-shirts is a clear breach of the injunction.

[3] Tina Hendrix admits that HMA is not registered as a 501(c)(3), but posits that it can operate as such because it has a fiscal sponsor that is purportedly a 501(c)(3).  Answer ¶¶ 4, 8.  Tina Hendrix has not pointed to any authority that allows a non-501(c)(3) to hold itself out as such on this basis.  Regardless, even if HMA were so registered, it would still be bound by the injunction, and thus barred from using plaintiffs' trademarks to raise money and promote its services.

Answer ¶ 13.  She similarly defends HMA's Facebook pages on the ground that they pre-date the permanent injunctions entered in this case.

The Court again finds with plaintiffs.  HMA's use of plaintiffs' intellectual property, specifically the terms "Jimi," "Jimi Hendrix," and "Hendrix," to solicit funds and advertise, is in clear violation of this Court's injunction.  *See* Leon Hendrix Perm. Injun. ¶ 2 (enjoining use of "the name and words and marks 'Jimi,' 'Hendrix' and/or 'Jimi Hendrix' . . . including but not limited to the . . . promotion, distribution or advertising of any product or service").  For the reasons reviewed above, the fact that HMA is (or holds itself out as) a non-profit does not exempt it from the injunction.  The fact that HMA's infringements on plaintiffs' Lanham Act rights pre-date the injunction also does not insulate such conduct.  To the contrary, the injunction broadly covers all conduct post-dating its effective date, regardless of whether such conduct was newly initiated or a continuation of existing practices.  The Court thus finds HMA's exploitation of the Jimi Hendrix name and marks for fundraising and promotion of its services, too, to violate the permanent injunction

### 3.     No Diligent Attempt To Comply

Finally, contempt is not appropriate where a defendant "diligently attempted to comply in a reasonable manner."  *CBS Broad. Inc.*, 814 F.3d at 98.  A party defending against contempt may "assert noncompliance with a court's order because of inability or impossibility," although to do so, "the alleged contemnor must prove 'clearly, plainly and unmistakably' that 'compliance is impossible.'"  *City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08 Civ. 3966 (CBA), 2010 WL 2653369, at *7 (E.D.N.Y. June 25, 2010) (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995)); *see also Aquavit Pharms. v. U-Bio Med, Inc.*, 19 Civ. 3351 (VEC) (RWL), 2019 WL 8756622 at *7–8 (S.D.N.Y. Dec. 16, 2019) (finding defendant in

contempt where compliance efforts were "half-hearted at best, and purposeful, intentional and willful at worst"), *report and recommendation adopted in relevant part*, 2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020).

The defendants have not demonstrated any attempt to comply with the permanent injunction, let alone a diligent one.  Leon Hendrix and HMA failed to appear in response to this contempt action.  And Tina Hendrix, while generally invoking HMA's asserted non-profit nature, has not identified any attempts that she, HMA, or Leon Hendrix have made to comply with the injunctions once notified of them.  Further, the breaches here, by nature, were avoidable—not impossible to avoid.  Defendants were at liberty to market, by means other than using plaintiffs' marks, the goods and services that they sought to promote and sell.  They chose, however, to exploit Jimi Hendrix's name and likeness, no doubt concluding that it stood to reap them larger returns.  This element, too, is therefore established.

For the above reasons, the Court finds that Leon Hendrix, Tina Hendrix, and HMA are in contempt of the Leon Hendrix Permanent Injunction.

### C.    Remedy

A court that finds civil contempt "is vested with wide discretion in fashioning a remedy." *Weitzman*, 98 F.3d at 719 (quotations omitted).  Here, plaintiffs ask—given the established violations of its injunction and the threat of continuing violations by Leon Hendrix, Tina Hendrix, and HMA—that the Court issue an order of civil contempt as to the three contemnors, and order them immediately to protect plaintiffs' intellectual property, disgorge any money they have received from conduct violating the injunction, and impose a fine.  Pl. Mem at 22–23; Pl. Reply at 9.

Having found Leon Hendrix, Tina Hendrix, and HMA in contempt, the Court—to immediately protect the plaintiffs' intellectual property and in the interest of divesting the defendants of gains received through violative conduct—orders Leon Hendrix and Tina Hendrix, both individually and on behalf of HMA, immediately to:

1. cease and desist from all conduct already prohibited by the permanent injunctions;

2. remove all Jimi Hendrix indicia from their respective websites (including, but not limited to, www.hendrixmusicacademy.org) and social media pages;

3. change the name of HMA to clarify that it is not affiliated with Jimi Hendrix or the plaintiff companies;

4. cease using the website URL www.hendrixmusicacademy.org and change the URL to clarify the name consistent with number (3) herein;

5. recall and destroy all HMA apparel and merchandise bearing any Jimi Hendrix indicia or plaintiffs' intellectual property;

6. within 60 days from the date of this Court's order, provide an accounting of all monies received in relation to the March and all monies received in relation to HMA apparel and merchandise sold from the date of the Leon Hendrix Injunction (July 24, 2020) to present;

7. within 60 days from the date of this Court's order, provide a list of all donations, including name, contact information, and amount, received by the HMA "Not-for-Profit 501c3 Educational Charity" from the date of the Leon Hendrix Injunction (July 24, 2020) to present;

8. identify other instances of prior noncompliance;

9. within 60 days from the date of this Court's order, Leon Hendrix and Tina Hendrix, individually and on behalf of HMA, provide sworn affidavits that they have complied with these directives and of their intent to abide by the permanent injunctions.

The Court will retain jurisdiction for the purpose of any proceedings to enforce this order.

In addition, the Court finds that imposition of a fine will be warranted on Leon Hendrix, given his history of noncompliance, if he fails to comply with the foregoing directives. A court may impose a fine if "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'"

17

*Waterkeeper All. Inc*, 2017 WL 4386376, at *4, (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)); *see also CBS Broad. Inc.*, 814 F.3d at 101 ("[A] non-compensatory fine is civil, and thus may ordinarily be imposed in the absence of a criminal trial only if the contemnor is afforded an opportunity to purge." (alteration in original) (quotation omitted)).  Given Leon Hendrix's history of noncompliance, the Court finds that a fine will be appropriate if he continues to ignore this Court's orders aimed at protecting plaintiffs' intellectual property rights.  Accordingly, if by 60 days from the date of this Order, Leon Hendrix has not complied with the foregoing directives, he must pay a penalty of $100 per day to plaintiffs.

As to Tina Hendrix, individually and on behalf of HMA, the Court hereby puts her and HMA on notice that future violations of this order, or the Leon Hendrix Permanent Injunction, will be met with substantial sanctions.  The Court does not, however, impose a fine on the contemnors other than Leon Hendrix, in recognition of the fact that, although Tina Hendrix and HMA are bound by the Leon Hendrix Permanent Injunction, neither was a party to plaintiffs' underlying lawsuit.  *See Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07 Civ. 3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) ("To impose sanctions on a nonparty, however, the violation of a court order is also generally required.").

### D.    Attorneys' Fees

Finally, plaintiffs request reimbursement for their reasonable attorneys' fees and costs expended in enforcing this Court's permanent injunctions, including in bringing this contempt motion.  Pl. Mem. at 23.  A court may award attorneys' fees and costs as part of a contempt order.  *See Al Hirschfeld Found.*, 438 F. Supp. 3d at 207–08 ("[T]he purpose of compensatory sanctions is to make reparation to the injured party and restore the parties to the position they

would have held had the [order] been obeyed.  The court may, however, serve either goal—the coercive or the compensatory—by awarding attorneys' fees and costs to a contempt victim." (second alteration in original) (quotations and citations omitted)).  A finding of willfulness is not necessarily a prerequisite to awarding fees and costs. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979) ("The fact that the prohibited act was done inadvertently or in good faith, however, does not preclude a citation for civil contempt, for the sanction is remedial in nature.").

Plaintiffs request that Leon Hendrix, in particular, be ordered to reimburse their attorneys' fees and costs as a result of this motion and other efforts to enforce the injunction against him. *See* Pl. Reply at 10.  An award of "the costs of prosecuting [a] contempt motion, including reasonable attorney's fees . . . is appropriate only where the contemnor had actual notice of the Court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 567 (S.D.N.Y. 2001) (quotations omitted).  That is so here.  Based on the forgoing, the Court finds that such an award of fees and costs is appropriate, limited to fees and costs incurred in connection with bringing the instant contempt motion, which the Court has found meritorious.

The court therefore orders Leon Hendrix to reimburse plaintiffs for the attorney fees and costs they incurred as a result of his actions.  To that end, the Court orders plaintiffs' counsel to submit documentation of these fees and costs by January 21, 2021.  *See also* Dkt. 213 (awarding attorneys' fees and approving rates of fees in this matter).

**CONCLUSION**

For the foregoing reasons, the Court grants plaintiffs' motion for civil contempt.  Leon Hendrix, Tina Hendrix, and HMA are ordered to comply with this Order as well as the Court's previous injunction.  Within 60 days from the date of this order, Leon Hendrix and Tina Hendrix, individually and on behalf of HMA, are ordered to submit sworn affidavits that they have read and complied with the directives herein and that they intend to abide by the permanent injunctions.  Failure to comply will result in sanctions as discussed herein.

In addition, Leon Hendrix is ordered to reimburse plaintiffs' reasonable attorneys' fees and costs in an amount to be determined by this Court.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 468.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: January 11, 2021
       New York, New York